DICKERMAN v. LORD & SMITH.

1. **Payment under protest:** ATTACHMENT. To justify the recovering back of money paid when all the facts were known to the parties paying, it is not sufficient that the money was paid unwillingly, but it must have been compulsory, and the compulsion must have been illegal, unjust and oppressive. A suit by attachment in a State foreign to the residence of the defendant is not such compulsion.

*Appeal from Winneshiek District Court.*

THURSDAY, DECEMBER 6.

PAYMENT UNDER PROTEST: WHEN MONEY THUS PAID MAY BE RECOVERED BACK.—The petition seeks to recover $180, "which" (it is alleged) "the defendants wrongfully and oppressively had and received of plaintiff on the 12th day of May, 1865." It is also alleged "that defendants falsely and fraudulently represented that plaintiff was indebted to them in that sum, well knowing that plaintiff owed them nothing; that defendants, in Chicago, May 12, 1865, by necessity and by wrongful attachment of plaintiff's money then in Chicago, and where this plaintiff could not defend his rights, being deprived of his own evidence to sustain his cause, did thereby extort and compel plaintiff to pay them $180; that no part of the same was owing defendants, which defendants well knew, and plaintiff paid the same unwillingly and under duress,

and under protest." The present action was commenced in the Winneshiek District Court *by attachment* against the defendants as non-residents of the State.

The answer was in denial. All of the testimony is in the record, and consists of the deposition of the plaintiff on his own behalf and that of the two defendants on their behalf.

It is shown that the plaintiff was a resident of Decorah, in this State, and the defendants of Chicago, where they are engaged in business as wholesale druggists.

It is admitted that, in June and July, 1863, plaintiff purchased merchandise of the defendant to the amount of $458.97. It is also admitted that, in July and September, 1863, payments were made by plaintiff

| | |
|---|---:|
| To the amount of,........................... | $284 06 |
| Balance due defendants,.................... | 174 91 |

This balance ($174.91), the plaintiff claims he paid to defendants, in October, 1863, at their store in Chicago, but says that, if he took a receipt, it is lost. Of this payment, plaintiff produced no evidence except his own oath. Both defendants positively deny that any such payment was made to them by the plaintiff. Several circumstances, not very conclusive, were relied upon by the parties to fortify their respective claims, as regards this disputed payment; but these, as the opinion does not turn upon the weight of evidence, need not be specially detailed. In May, 1865, the present defendants commenced an action against the present plaintiff in Chicago by attachment, and garnished certain moneys which plaintiff had on deposit in one of the banks in that city. On the next day after the attachment was served, the parties had an interview, plaintiff claiming that he had paid the money in October, 1863, and the defendants denying it. The matter was arranged by the plaintiff paying the principal

of the account claimed to be due by the defendants, the latter throwing off the interest. Plaintiff claims that he notified them at the time of payment that he should get it back if he could; the defendants, on the other hand, claiming, and one of them testifying, that after the explanations which were made to him, "the plaintiff appeared satisfied with the arrangement, and that it was all right, and that he had done wrong in not answering our communications, none of which had been replied to for over two years;" that the plaintiff "confessed that he thought defendants (Lord & Smith) were acting in good faith, and under the circumstances, they could not do otherwise than to try and enforce collection of their claim."

Under the testimony and instructions, the jury found a verdict for the plaintiff for $180, with six per cent interest from May 12, 1865.

Motion for new trial being overruled, defendants excepted and appeal.

*G. R. Willett* for. the appellants.

*L. Bullis* for the appellee.

DILLON, J.—After stating the nature of the action, the court instructed the jury that " the first question for them

1. PAY-
MENT
UNDER
PROTEST:
attach-
ment.

to determine is, was the plaintiff indebted to defendants in the sum of $174.91, at the time defendants brought their attachment suit against plaintiff, as alleged ?" The court, after alluding to the circumstances proper for the jury to consider in deciding this question, adds : "Weighing all the testimony and circumstances carefully, you will determine whether plaintiff had paid his account, in full, to the defendants before the commencement of the said attachment suit. If you find he had paid the account in full, and afterward defendants brought suit by attachment and recovered it

again, you will find for the plaintiff a verdict for the amount so paid by him.   But if you find plaintiff had not paid the account of defendants before the attachment suit and the alleged second payment, you should find for defendants."   The foregoing portion of the charge was not excepted to, but that which follows was excepted to by the defendants.

" Ordinarily," continues the court's charge, " if a man pays money on an account against him, the law presumes that he owes the same, and will not allow him to recover it again, unless paid by accident or mistake; but if he pays such account after being sued thereon, in a state foreign to his residence, by the extraordinary process of attachment, and to obtain a release of his property and under protest that the account is unjust because it has already been paid, it is paid under such legal compulsion that no presumption arises against the person so paying under protest."

There was no evidence tending to show actual fraud or intentional bad faith in either plaintiff or defendants.

The jury must have found as a matter of fact, that the account had been paid by the plaintiff prior to the attachment suit.   As an original question, the correctness of this finding is by no means clear, but the evidence on this point was conflicting, so much so, that we would not be warranted in interfering, upon this ground alone, with the verdict.

The judgment below must therefore stand, if the charge of the court, above quoted, was, under the circumstances, correct.

Taking the charge together, and viewing it as the jury would doubtless view it, it laid down this principle of law, *to wit:* If an alleged debtor is sued in a State other than the one in which he resides, and his property is attached, this, without more, and even if the attachment

suit is brought in good faith, will justify such alleged debtor, though he knew all the facts, in paying the amount claimed, and if he does so under protest, he may recover it back in the courts of his own State, if he can show that in point of fact the debt had before been paid, or was not just.

To this extent the law does not go. To justify recovering back money paid, when all the facts were known to the party paying, such payment must not have been simply an unwilling payment, but a compulsory one, and the compulsion must have been illegal, unjust or oppressive.

Now, is it such a compulsion merely to sue a man by attachment in a State foreign to his residence? We think not. In this case the alleged debt was contracted in Illinois, and the admitted payments made on the account were paid in or sent to Chicago, and it would probably be fair to infer that the understanding of the parties was that payment should be made to defendants at the place where they extended the credit.

Let us test the principle laid down in the court's charge.

If I am sued in my own State, without attachment, and know the claim is unfounded and yet pay the money, I cannot recover it back although I may, at the time of payment, have said, I paid it under protest. And if I am sued by attachment, the result must be the same, if the attachment is the only circumstance relied upon to make the payment a compulsory one. And why? Because my adversary, in either case, has made use of no unjust or illegal means to enforce his claim, or pretended claim against me. It is my duty to meet him *in limine*, and litigate and settle the question of my indebtedness. It is for this purpose that courts are instituted. I cannot pay the amount, and by simply saying, I do so under protest, afterward re-open the question. When one pays money on an alleged claim against him, he is forever

concluded from saying he did not owe it, if he paid under no mistake of fact, and if the party receiving it made use of no illegal means to coerce the payment.

Now, these principles of the law are not varied by the simple circumstance that one is sued in a State foreign to his residence. The defendants, by the law of Illinois, in which State they resided, and in which plaintiff contracted the account, had a right, if they could get jurisdiction, to sue the plaintiff in that State, and he being a non-resident, the laws of that State gave them a right to an attachment against his property found within the jurisdiction. In thus suing, therefore, they made use of no remedy which the law did not allow; and it will not do to hold that a payment, secured by none but the means provided by the law itself, is a compulsory or coerced one, there being no element of fraud or other ingredient of oppression in the case.

The plaintiff knew as well when he paid the money to the defendants, May 12, 1865, as he did a few days afterward, when he brought this suit to recover it back, that he did not owe it. He gained no new knowledge meantime; nor, indeed, any new evidence, such as a lost receipt for the amount. We must presume that the tribunals of our sister State would have fairly and correctly adjudicated the controversy between the parties. See how the principles asserted in the court's charge would work. Here is a dispute between parties residing in different States. One of the parties is found in Illinois, and the courts of that State acquire, in due form of law, jurisdiction over his property and his person. He says: " I will not go to trial here; I will pay under protest, and then sue in my own State to get back the amount." He does pay under protest, and returns to Iowa and sues the other party in that State by attachment. This party says, " I will not go to trial in Iowa,

and I will also pay under protest, and afterward sue in my own State to get back the amount." A principle working such results cannot be well founded.

What we hold is, that the mere fact (there being no element of fraud or other means of oppression) that a party is sued by attachment in the State where the plaintiff resides, but which is foreign to the residence of the defendant, will not, without more, make the payment of money compulsory in such a sense that it can be recovered back, if paid under protest and if it can be shown not to be due.

We find, upon looking into the adjudicated cases, that the views above expressed are well sustained.

The principles of law applicable to the case in hand are clearly stated by SHAW, Ch. J., in delivering judgment in *Preston* v. *Boston* (12 Pick., 7—13). It was an action by a tax-payer to recover of the city of Boston an illegal tax collected by it.

"The only remaining question," says the distinguished jurist just referred to, "is, whether this money was paid voluntarily or under duress. A party who has paid voluntarily under a claim of right shall not afterward recover back the money, although he protested at the time against his liability. The reason of this is obvious. The party making the demand may know the means of proving it, which he may afterward lose; and because any other course would put it in the power of the other party to choose his own time and opportunity for commencing suit. *Brisbane* v. *Dacres*, 5 Taunt., 143. But it is otherwise when a party is compelled by duress of his person or goods to pay money for which he is not liable; it is not voluntary, but compulsory, and he may rescue himself from such duress by payment of the money, and afterward, on proof of the fact, recover it back. *Astley* v. *Reynolds*, 2 Str., 916.

" What shall constitute such duress is often made a question. Threat of a distress for rent is not such duress, because the party may replevy the goods distrained and try the question of liability at law. *Knibbs* v. *Hall*, 1 Esp. R., 84. Threat of legal process is not such duress, for the party may plead and make proof and show that he is not liable. *Brown* v. *McKinally*, 1 Esp., 279. But the warrant to a collector under our statute is in the nature of an execution against the person and property of the party, upon which he has no day in court, no opportunity to plead and offer proof, and have a judicial decision of the question of his liability." See also *Lincoln* v. *Worcester*, 8 Cush., 56, 60; *Hays* v. *Cincinnati*, Ohio St. R., 268, and cases cited; *Glass Company* v. *Boston*, 4 Metc., 181, 187. In this last case the principle and the reason for it are stated thus : " If a party, with full knowledge of all the facts of the case, voluntarily pays money in satisfaction or discharge of a demand unjustly made on him, he cannot afterward allege such payment to have been made by compulsion, and recover back the money, *even though he should protest* at the time of such payment that he was not legally bound to pay the same. The reason of the rule and its propriety are quite obvious when applied to a case of payment upon a mere demand of money, unaccompanied with any power or authority to enforce and demand, *except by a suit at law*. In such case, if a party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the party of whom the money is demanded, it should precede payment. If it were not so the effect would be to leave the party who pays the money the privilege of selecting his own time and convenience for litigation, delaying it, as the case may be, until the evidence which the other party would have relied upon to sustain his claim may be

lost by the lapse of time and the various casualties to which human affairs are exposed."

This reasoning is sound and unanswerable, and is entirely applicable to the case at bar.

The judgment below is reversed and the cause is remanded.

Reversed.