The City of Muscatine v. The Keokuk Northern Line Packet Company.

The Northwestern Union Packet Company v. The City of Muscatine.

1. **Municipal Corporations:** WHARFAGE: REASONABLE COMPENSATION. Under the charter of a city providing that the city "shall have control of the landings of the Mississippi river, and the right to build wharves and regulate the landing, wharfage and dockage of boats," it may establish and construct wharves and collect a reasonable compensation for their use.

2. ———: ———: MUST BE FIXED BY ORDINANCE. The erection of a wharf by a city must be presumed to be for the use and benefit of the public, and in the absence of any ordinance fixing the wharfage dues or providing for the payment of a compensation for the use of its wharves, such compensation cannot be collected by the city.

3. ———: ———: VOLUNTARY PAYMENT. Where the owners of boats have paid wharfage fees under protest, which were demanded and collected in the absence of authority to make the demand, they cannot recover them back in an action against the city.

4. ———: ———: ———. The mere danger that an action at law will be commenced to enforce payment, does not make the payment of a demand unjustly and illegally made a compulsory payment.

*Appeal from Muscatine Circuit Court.*

WEDNESDAY, DECEMBER 13.

THESE two causes are submitted on the same abstract and argument.

In the second action the plaintiff seeks to recover of the defendant certain wharfage dues paid under protest, and the issues in this action are like those presented in the other, except such as grow out of the right to recover back the money so paid.

The petition in the first action contains two counts—the first stating that the City of Muscatine was incorporated by an act of the legislature of Iowa, which, among other things, declared that the City of Muscatine "should have control of the land-

ing of the Mississippi river, to build wharves, and regulate the landing, wharfage and dockage of boats."

That the city council passed ordinances, which are now in force, as follows: "That the landing on the shore of the Mississippi river from the foot of Iowa avenue to the foot of Pine street, including the width of those streets, is declared to be a steamboat wharf, and shall be kept clear of all obstructions except articles unloaded from or to be shipped upon steamboats, barges, keel boats, and lighters.     *     *     *     *

"Sec. 4. A wharfage of five dollars shall be charged for and be paid by each steamboat landing at the levee, or at any other point in the city limits, on its upward trip, and any boat not having landed on its upward trip, shall pay the same sum if they land on the downward trip.

"Sec. 5. The wharfage to be paid to the wharfmaster."

That the city graded, built, and now maintains, a wharf or levee on the shore of the river between the streets designated in the ordinance. That defendant was the owner of certain steamboats—naming them—which defendant used in the business of commerce on said river; that defendant, on the days named in the petition, commencing July 1, 1875, landed said boats at the wharf of the city on the upward trip of said boats; at which times the wharfmaster of said city demanded the sum of five dollars each for the use of said wharf by said boats, which was a reasonable compensation, which defendant refused to pay.

The second count avers that in 1858 the city built and erected a wharf, as designated in said ordinance, at an expense of more than ten thousand dollars; that the city is the owner of said wharf; has expended thereon more than one hundred dollars each year for repairs; that said wharf was built by the city for the use and benefit of steamboats landing at said city; that defendant, knowing the city had erected and maintained said wharf for said purpose, and knowing that said city made a charge of five dollars for every steamboat landing at and using said wharf, on the upward trip, on the days named, commencing July 1, 1875, landed the boats designated, on their upward trip, and at such times used said wharf for said

boats to receive and discharge freight and passengers, and then and there promised to pay said sums, which were a reasonable compensation for the use of said wharf by said boats, and which said several sums defendant has refused and still refuses to pay, etc.

To said petition the defendant filed a demurrer to so much of the petition as sets out section 4 of the ordinance, on the following grounds: "That the facts stated in the petition, so far as relates to said section, do not entitle the plaintiff to the relief demanded in this:

" 1. Because section 4 of the ordinance set forth in plaintiff's petition is in conflict with article 1, section 8, paragraph 3, of the Constitution of the United States, which reads as follows:

" ' *     *     *     * Congress shall have power to regulate commerce with foreign nations and among the several states and with the Indian tribes.'

" 2. Because section 4 of the ordinance set forth in plaintiff's petition is in conflict with article 1, section 9, paragraph 5 of the Constitution of the United States, which reads as follows:

" ' No tax or duty shall be laid on articles exported from any state; no preference shall be given by any regulation of commerce or revenue to the ports of one state over those of another; nor shall vessels bound to or from one state be obliged to enter, clear or pay duties in another.'

" 3. Because section 4 of the ordinance set forth in plaintiff's petition is in conflict with article 1, section 10, paragraphs 1 and 2 of the Constitution of the United States, which read as follows:

" ' No state shall, without the consent of Congress, lay any imposts or duties on imports or exports except what may be absolutely necessary for executing its inspection laws.     *     *     *     No state shall, without the consent of Congress, lay any duty of tonnage     *     *     *.' "

There were other grounds of demurrer which it is deemed unnecessary to notice. The demurrer was sustained because

the fourth section of the ordinance was in "conflict with the Constitution, laws and ordinances of the United States."

The answer denied that the city had erected or maintained any wharf, and averred that the portion set apart for a steamboat landing was not kept clear of obstructions. That the city had leased the same to private parties, who had assigned the leases to the defendant, who had at its own expense constructed the wharf at which defendant's boats had landed; that the plaintiff provided no snubbing posts, bolts, rings or other conveniences for the landing of boats, and that plaintiff was at no expense in repairing said wharf.

There was a trial to the court, a finding for the city in both actions, and judgment, from which the defendant appeals.

*James H. Davidson* and *D. C. Cloud*, for appellant.

*Hanna, Fitzgerald & Hughes*, for appellee.

SEEVERS, CH. J.—I. As the city has not appealed from the ruling of the court sustaining the demurrer, the question thereby presented is not before us. For the purposes of this case, the decision of the Circuit Court in that respect must be deemed correct.

The Circuit Court must have found that the city had established and constructed a wharf, at which defendant's boats landed, and therefrom, as a conclusion of law, found there was an implied promise to pay a reasonable compensation for the use of the wharf.

There was evidence to justify such finding, and we cannot, under the well established practice of this court, set aside the finding of facts as being against the weight of evidence. But there was no evidence tending to show that defendant promised or agreed to pay any wharfage dues; and the finding of the court must have been based solely on an implied promise resulting from the use of the wharf.

Previous to incurring the liability as claimed by the city,

DECEMBER TERM, 1876.          189

The City of Muscatine v. The Keokuk Northern Line Packet Co.

for which this suit is brought, the defendant paid certain wharfage dues, under protest. Such payments, however, were made under section four of the ordinance. At no time can it be said the defendant recognized the right of the city to collect a reasonable compensation for the use of the wharf.

*1. MUNICIPAL corporations: wharfage: reasonable compensation.*

The question for determination is, whether, under the charter, ordinance, and facts above stated, the city can recover such compensation.

The charter provides that the city "shall have control of the landing of the Mississippi river, to build wharves and regulate the landing, wharfage and dockage of boats and water crafts, * * * to establish the grade of streets, alleys and wharves, and to change that of wharves at pleasure."

There can be no doubt the city possessed the power to establish and construct a wharf and regulate the landing and wharfage of boats thereat.

II. The next question is, what has the city done under the granted power? The abstract states that the city introduced in evidence the charter and ordinance copied in the petition. Turning thereto, we find the ordinance provides that a certain portion of the landing on the shore of the Mississippi river should be a steamboat wharf, and kept clear of obstruction, except articles unloaded from or to be shipped upon steamboats and barges, keel-boats and lighters. Then follows section four, which has been declared void; and section five provides, "such wharfage is to be paid to the wharf-master of said city," that is to say, the wharfage dues, established by section four of the ordinance, are to be paid to the wharf-master.

Inasmuch as section four of the ordinance is void, the city has not in any manner or form exercised the power given by the charter to "regulate the landing, wharfage and dockage of boats," except to declare a certain portion of its frontage to be a steamboat wharf.

In the absence of any ordinance fixing the wharfage dues, or providing for the payment of a compensation for the use of the wharf, under the power given in the charter, we are of the opinion such dues cannot be

*2 ——: ——: must be fixed by ordinance.*

190        SUPREME COURT OF IOWA,

The City of Muscatine v. The Keokuk Northern Line Packet Co.

claimed or collected by the city. Until the city claims the right and assumes the responsibilities under the power given in the charter to regulate, not only the landing, but the wharfage and dockage of boats, no rights can be acquired thereunder.

These public municipal corporations have the power to construct wharves on the Mississippi river, and it may be conceded, when they have done so, they may charge and collect a reasonable compensation for the use of such wharves; but, if such is their design and intent, they must in some manner indicate it, so that the owners of vessels landing there may so know and act accordingly.

The erection of a wharf by a city is and must be presumed to have been made for the use and benefit of the public, like the paving of a street or other improvement, unless the contrary is shown. Such use to be free, unless an intent to charge therefor is provided by ordinance, or possibly in some other manner, so as to clearly indicate such intent.

These municipalities have different relations from those of individual riparian proprietors. In case the latter should erect a wharf, the presumption might be that he intended to charge for its use. He has no public duties to perform, and acts solely in an individual capacity. Not so as to these public corporations. As to them, the general rule is, they act in a public capacity and for a public purpose.

It is not shown that the city ever demanded any compensation *for the use of the wharf*, either by the wharf-master or other person, or that the defendant ever paid anything for such use. Whatever was demanded on one side and conceded by the other was done under section four of the ordinance, and because it provided for the payment of wharfage, and the most the city can claim is that the ordinance was regarded as legal and valid as a law. Such section of the ordinance having been declared void from the beginning, whatever was done thereunder amounts to nothing and in no way affects the rights of the parties in this action.

III. In the second action the defendant seeks to recover

of the city wharfage dues paid the city, and which we have just determined to be illegal. Whether such a recovery can be had depends on the question whether the payments are to be regarded as voluntary or compulsory in a legal sense.

3. ——: ——: voluntary payment.

It is stated in the abstract that the city concedes the said payments were made under protest. The fair construction of this concession is, that the defendant at the time each payment was made protested or objected to the right of the city to collect wharfage dues.

We have looked in vain for any provision in the ordinances or general laws of the State authorizing a seizure of the boat, or proceeding in attachment, or in fact anything defining how or in what manner the payment of the wharfage dues could be enforced. In the absence of any such provision we think it is clear the collection of such dues could only be enforced in an ordinary action at law. Nor do counsel for the defendant claim otherwise, or that the payments were made under a mistake of fact. The rule on this subject is well stated as follows: "If a party, with full knowledge of all the facts of the case, voluntarily pays money in satisfaction or discharge of a demand unjustly made on him he cannot afterwards allege such payment to have been made by compulsion and recover back the money, even though he should *protest at the time of such payment* that he was not legally bound to pay the same. The reason of the rule, and its propriety, are quite obvious, when applied to a case of payment upon a mere demand of money unaccompanied with any power or authority to enforce such demand except by a suit at law." *Boston and Sandwich Glass Co. v. City of Boston*, 4 Met., 181. In that case the payment was regarded as compulsory because of the power vested in the collector of taxes to levy directly on the property of the party making the payment. To the same effect is *Wabaunsee Co. v. Walker*, 8 Kansas, 431, and authorities there cited. In fact our attention has not been called to any case where it has been held such a payment is compulsory, unless the officer or person to whom it was made was vested with the power to seize property and

thus enforce payment.    Such was the case in *Preston v. Boston*, 12 Pick., 7; State Tonnage Tax Cases, 12 Wall., 204, and other cases cited by counsel.    It is true that in the State Tonnage Case the judge delivering the opinion does not refer to such fact as having any bearing on the question.    Nevertheless, it is shown that such power existed.

In the *Packet Co. v. St. Paul*, 3 Dillon, 454, it does not appear whether or not the power existed to distrain for the wharfage dues, and the opinion is based solely on what is said by CLIFFORD, J., in The State Tonnage Tax Case.    The *R. R. Co. v. Pattison*, 41 Ind., 312, and *Harmony v. Bingham*, 12 N. Y., 99 (116), are not in point.    They involve a different principle and the facts are totally different.

We are of the opinion that the mere danger of a multiplicity of suits is not sufficient to make these payments compulsory.    No adjudicated case has been cited in favor of such proposition.    Under the facts appearing in the record before us, we are of opinion the payments were voluntary and not compulsory.    The judgment of the Circuit Court in the first action must be reversed, and in the second

AFFIRMED.