E. MANNING v. MARION POLING *et al.*, AND D. W. FERGUSON, Appellee, AND NICHOLS SHEPARD COMPANY, Appellant.

**Payment for Redemption:** WHEN NOT VOLUNTARY.    F. sold land to defendant in 1891, and took a note and mortgage as security, which he assigned to M., and guarantied payment.    M. obtained a judgment against defendant in 1885, and, on foreclosure of M.'s mortgage, N. filed a cross petition, and obtained a decree declaring his judgment lien to be superior to the mortgage.    F. bought the land under the foreclosure in July, 1895, and it was afterwards sold to N., under an execution on his judgment.    In September, 1896, F. paid to the clerk of the court, under protest, an amount sufficient to redeem the land from the sale to N. and afterwards the decree making N.'s judgment a prior lien was reversed.    *Held*, that F. was not entitled to recover the redemption money as an involuntary payment, since he could have protected his possession by a restraining order from the supreme court, and hence the payment was voluntary.

ON REHEARING.    Where a buyer under foreclosure pays a judgment for which the property is about to be sold on execution upon a judgment against a prior owner, which the buyer was under no obligation to satisfy, the payment is voluntary, because the sale might have been restrained by order of the supreme court.

SAME:    *Dissolving injunction—supersedeas.*    A decree was entered declaring that the lien of the judgment creditor was superior

to the mortgage, and defendant, who had purchased the property at the execution sale, under the mortgage, and taken possession, obtained a temporary injunction restraining the judgment creditor from disturbing his possession until the appeal from the decree was determined. The temporary writ was dissolved, on motion, by the judgment creditor, and defendant then redeemed from the judgment lien. *Held*, that the contention that defendant, by filing a supersedeas bond and appealing from the order dissolving the temporary writ, could have kept it in force, and that therefore the redemption was voluntary, was without merit, since an order dissolving such a writ is self executing, and is not superseded by filing a bond.

**Restraining Order:** PENDING APPEAL. Under Code, section 4109, conferring on the supreme court authority to issue all writs and processes necessary for the exercise and enforcement of its appellate jurisdiction, the supreme court has power to issue a restraining order to prevent one party to an appeal from disturbing the possession of the adverse party to the property in litigation, pending the appeal.

*Appeal from Van Buren District Court.*—HON. F. W. EICHELBERGER, Judge.

MONDAY, OCTOBER 15, 1900.

DECREE was entered as prayed in the cross-petition of D. W. Ferguson, and Nichols & Shepard Company appeal. —*Modified.*

*Wherry & Walker* for appellant.

*Mitchell & Sloan* for appellee.

LADD, J.—Poling bought the land of Ferguson December, 31, 1891, and on the same day executed a mortgage thereon securing the payment of a certain note. Ferguson sold this note to Manning, guaranteeing its payment. Poling was then indebted to Nichols & Shepard Company on a judgment rendered against him in 1885, which also became a lien on the land. Manning began foreclosure proceedings on the mortgage April 12, 1894. Decree was entered against Poling and Ferguson, as prayed, and the premises sold thereunder to Ferguson July 10,

1894. Nichols & Shepard Company filed a cross petition averring that the judgment was a lien superior to the mortgage, and, when Manning dismissed his action as to that company, it procured a decree to be entered so declaring. Thereupon Ferguson, as guarantor of the mortgage debt, asked that the decree be set aside as to him, and so modified as that the mortgage be adjudged the prior lien. On May 16, 1895, the default was set aside and the cross petition dismissed as to Ferguson, but he was held not to be entitled to other relief. On appeal this order was reversed; the opinion having been filed October 28, 1897, and a hearing with respect to priorities directed. *Manning v. Ferguson,* 103 Iowa, 561. In the meantime, however, July 10, 1895, Ferguson had obtained a sheriff's deed under the foreclosure sale, and in virtue of a general execution issued on the judgment the land was sold on the tenth of September, 1895, to Nichols & Shepard Company. On September 9, 1896, Ferguson paid into the hands of the clerk, under protest, the amount necessary to redeem from this last sale and it was paid over to the Nichols & Shepard Co. After the reversal mentioned, Ferguson filed a cross petition, in which he averred that the mortgage was executed to secure the purchase price of the land, and therefore was a lien prior to that of the judgment, and also the facts with reference to the redemption, and asked for the restoration of the money paid. Decree was entered as prayed, and it is the appeal therefrom we are now considering. The superiority of the lien of the mortgage was conclusively established, and the correctness of that portion of the decree is not questioned.

I. The only point now made is that the payment in redemption of the judgment sale was voluntary, and may not, for that reason, be recovered. It will be observed that Nichols & Shepard Company, but for the redemption, would have been entitled to a sheriff's deed September 10, 1896, and, as the district court had declared the judgment the superior lien, might have obtained posses-

sion thereunder, and held it at least up to the time the order refusing to open the decree was reversed, on the twenty-eighth of October, 1897. The possession of this land, then, for more than one year, was involved. Statements to the effect that there can be no duress with respect to realty may be found in some of the earlier cases. Thus, in *Fleetwood v. City of New York,* 2 Sandf. 475, the court remarked that "the reasons for the rule are wholly inapplicable to real estate, and we are not aware of any instance in which it has been applied to that species of property." But the later authorities ignore mere distinctions in kinds of property, and invariably rest their conclusions on the answer to the one question, "Was the payment voluntary?" and rightly hold it immaterial whether the duress be of goods, or of real property, or of the person. *Pemberton v. Williams,* 87 Ill. 15; *Stephan v. Daniels,* 27 Ohio St. 527; *Gas Co. v. Galveston Co.,* 54 Tex. 287; *Mariposa Co. v. Bowman,* Deady, 231 Fed. Cas. No. 9089; *White v. Heylman,* 34 Pa. St. 142; *Close v. Phipps,* 7 Man. & G. 586; *Joannin v. Ogilvie,* 49 Minn. 564 (52 N. W. Rep. 217, 32 Am. St. Rep. 581). In the last case it was laid down as a rule sustained by modern authorities generally "that such pressure or constraint as compels a man to go against his will, and virtually takes away his free agency, and destroys the power of refusing to comply with the unlawful demand of another, will constitute duress"; or, as more concisely put further on, "The real and ultimate fact to be determined in every case is whether or not the party really had a choice—whether he had his freedom of exercising his will." Payment of the amount illegally demanded on a mechanic's lien, to enable the owner of the land to borrow money thereon in order to satisfy an overdue mortgage of $63,000, on which foreclosure proceedings were threatened, was there held to have been involuntary. In *Lyman v. Lauderbaugh,* 75 Iowa, 484, this court declared, "Such payment must not have been simply an unwilling payment, but a compulsory one; and the compulsion must have been illegal, unjust, and oppres-

sive." It is often difficult to determine what will amount to coercion sufficient to render payments involuntary. A very accurate, and at the same time comprehensive, statement of the rule will be found in *Brumagim v. Tillinghast,* 18 Cal. 265 (79 Am. Dec. 176), by Justice Field: "It may be said in general that there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment, from which the latter has no other means of immediate relief than by advancing the money." To the same effect, see *York v. Hinkle,* 80 Wis. 624 (50 N. W. Rep. 895, 27Am. St. Rep., 73); *Swift Co. v. U. S.,* 111 U. S. 22 (4 Sup. Ct. Rep., 244, 28 L. Ed. 341); *Robertson v. Frank Bros. Co.,* 132 U. S. 17 (10 Sup. Ct. Rep., 5, 33 L. Ed. 236); *Stover v. Mitchell,* 45 Ill. 213; *Mayor, etc., v. Lefferman,* 45 Am. Dec. 145, note. The result of all the authorities is that the party making payment must be put to his choice between the comparative evils of the inconvenience and loss by the detention of his property, and the payment of an unjust and illegal demand. See note to *Guetzkow Bros. Co. v. Breese,* 96 Wis. 591 (65 Am. St. Rep. 83, s. c. 72 N. W. Rep., 45.) For, if there be other adequate means of escaping the imminent infringement of property rights, these should be resorted to, rather than that litigation be postponed by the payment of the controverted claim. If, then, Ferguson was forced to choose between making redemption from the judgment sale, and yielding possession of the land, his payment ought not to be regarded as voluntary. The cases relied on by appellant are not in point. Payment of a judgment appealed from necessarily concedes its correctness, and estops the party making it from asserting error. This is all that appears from *Hipp v. Crenshaw,* 64 Iowa, 404, and like decisions. In *Morris v. County of Sioux,* 42 Iowa, 416, and *Sears v. Marshall County,* 59 Iowa, 603, redemption of land from void tax sale was adjudged voluntary because the owner was not put to his

choice; the title not being in peril, and no payment required for its protection. No question was made in *Thayer v. Coldren*, 57 Iowa, 112, but that the attempt to redeem was voluntary. In *Weaver v. Stacey*, 93 Iowa, 689, the land had been decreed subject to the lien of Stacey's judgment, and, having been sold thereunder, Weaver (the alleged fraudulent grantee), pending an appeal from the decree, redeemed from the sale; and the payment was adjudged voluntary, although this court subsequently declared the conveyance from the judgment defendant to Weaver valid. This was put on the ground that no interest Weaver had in the land was affected by the sale, and redemption was unnecessary to protect his title. The doctrine of caveat emptor applies to sheriffs' sales, and here, as in *Weaver's Case*, if Ferguson rested his contention on the proposition that payment was essential to protect his title he would have no standing in court. His payment was, however, not to protect title, but possession, and on this point Weaver's case is silent. It was neither presented by the record nor raised in argument.

II. But was Ferguson driven to the stress of redeeming or being ousted of his possession? The appellant asserts that two other remedies were open to him. It seems that, soon after the execution on the judgment had issued, Ferguson sued out a temporary writ of injunction, restraining the sale of the land; and afterwards, on motion, this was dissolved, and his petition dismissed. The correctness of this decision is too apparent for discussion. It was merely an attempt to religitate the issues raised in the order refusing to modify the decree. But it is said that an appeal with a supersedeas bond would have continued the temporary writ in force. The order of the court dissolved that *eo instanti*. No process was essential. The order itself ended the previous restraint of the temporary writ, and stood, under the statute, unaffected by appeal or stay. Code, section 4128; *Watson v. Richardson*, 110 Iowa, 673. Such orders are self-executing, and are not superseded by the fil-

ing of a bond. *Jayne v. Drorbaugh,* 63 Iowa, 711; *Allen v. Church,* 101 Iowa, 116. Besides he was not required to press a suit without merit in order to avoid payment.

III. But Ferguson might have protected his possession by a restraining order from this court. The very point involved in the appeal was determinative of whether his judgment was the superior lien, and of his right to the possession under the ·sheriff's deed. If he, as guarantor, could raise the issue as to. priority, then the decree must necessarily be opened, and the company might be prevented from disturbing his possession pending the litigation. No doubt is entertained of this court's authority, by appropriate orders, to continue the parties, with respect to the property in litigation, in statu quo, while the action is pending here on appeal. Otherwise, the very objects of an appeal might be defeated in many cases, or the rights of the parties often impaired. *Norris v. Tripp,* 111 Iowa, 115; *Luce v. Fensler,* 85 Iowa, 596. Such power, as it is essential to enable an appellate court to accomplish the high purposes of its existence, comes into being with the court itself. Besides, the authority to "issue all writs and processes necessary for the exercise and enforcement of· its appellate juridiction" is expressly conferred by statute (Code, section 4109). In *Kent v. Mahaffy,* 2 Ohio St. 498, the court, speaking through Thurman, J., declared: That an injunction may be allowed "in a case pending in this court upon an appeal is very clear. An injunction may be the very object of the suit,—the final decree sought,—and so a provisional injunction during the pendancy of the suit may be necessary for the purposes of justice. The power to allow these is a part of the appellate jurisdiction, the grant of which is authorized by the constitution, and has been made by the law." The supreme court of Indiana, in *Leech v. State,* 78 Ind. 579, took a similar view, saying that "in many cases in this court restraining orders have been issued to prevent advantage being taken of a judgment below until the determination of the cause here." And this may

be said to have been the practice in this court for many years. When no other means of protection is afforded by the law, this court does not hesitate to restrain either party to the appeal from jeopardizing the fruits of the litigation before a final decision is rendered. We do not overlook *Hicks v. Michael,* 15 Cal. 114, where the authority to issue a restraining order in a case pending on appeal, in the absence of statutory enactment, was denied. The question, however, seems to have received but scant consideration; and the fundamental principle that all courts of last resort have certain inherent powers, implied from the very act of their creation, appears to have been entirely overlooked. See Elliott, Appellate Practice, section 512.

On giving the security which may have been required, Ferguson's possession could have been fully protected by a restraining order from this court. As this avenue was open to him, his payment was voluntary, and he cannot recover.— MODIFIED and AFFIRMED.

GRANGER, C. J., not sitting.

ON REHEARING.

TUESDAY. MAY 14, 1901.

PER CURIAM.—Appellee relies in his petition for rehearing on *Grim v. Semple,* 39 Iowa, 570, and *Burrows v. Stryker,* 45 Iowa, 700, not cited in his original brief. The fact that Ferguson was not discharging a debt of his own must not be lost sight of. He was not under the slightest obligation to satisfy the debt of Poling to the Nichols-Shepard Company. Attention was called in the opinion to the rule adopted in this state to the effect that, as payment of a judgment by the defendant therein conceded its correctness, it operated to dismiss the appeal. But for the decisions there cited, it might well be said that the appealing party should be allowed to tempo-

rarily submit to the decision of the court pending final adjudication, rather than allow his property to be seized and sold, and then pay with the sheriff's fees added. See *Hayes v. Nourse,* 107 N. Y. 557 (14 N. E. Rep. 508; *Edwards v. Perkins,* 7 Or. 149; *Belton v. Smith,* 45 Ind. 291. All held in the cases relied on is that payment to prevent the execution of a sheriff's deed is not of such a character as to defeat the right of appeal; that the circumstances rebut the inference of assent to the correctness of the adjudication otherwise to be drawn from a compliance therewith. In such a case there is no acquiescence in the findings of the court, and recovery of the amount paid may be had in event of a reversal, not because of involuntary payment, but owing to the provisions of the statute requiring restitution (section 4145, Code), though money so paid might possibly be recovered on the principle that it belonged *ex aequo et bono* to the party paying it. *Chapman v. Sutton,* 68 Wis. 657 (32 N. W. Rep. 683. It is apparent that the circumstance of payment may refute any notion of acquiescence in the judgment and yet fall far short of being involuntary. Indeed, a choice of two courses may not even be involved. Appellee also relies on *Winzer v. City of Burlington,* 68 Iowa, 279, and *Thomas v. City of Burlington,* 69 Iowa, 140. It was simply held in these cases that, as void city taxes, paid under protest, must have been ordered by the board of supervisors to be refunded by the treasurer, under section 870 of the Code of 1873, and, as the county treasurer acts as the city's agent in collecting them, the same rule should be applied after the money has passed to the city, and its return required. The only speedy and efficient remedy in such a case seems to be the payment of the taxes, and thereafter suit for their recovery. Here the remedy through a restraining order was simple and speedy, and afforded full protection. No reason has been suggested for not resorting to it. While such a course was not mentioned in argument, it was necessarily involved in the contentions of the parties. The logical soundness of our conclusion is not questioned,

and, as we do not regard it in conflict with any previous de-
cision of this court, it is adhered to.

114    29
114   602

114    29
116   567

114    29
128   175

114    29
e133   302