B. A. GRONSTAL, Appellant, v. F. W. VAN DRUFF, Appellee.

No. 42899.

1386

June 21, 1935.

Wright & Baldwin, George S. Wright, Addison G. Kistle, and Paul E. Roadifer, for appellant.

Tinley, Mitchell, Ross & Everest and Frank E. Northrop, for appellee.

KINTZINGER, J.—The real estate in question, consisting of 620 acres, was originally owned by Marshall J. Williams, who executed a mortgage thereon for $37,000 to the Lincoln Joint Stock Land Bank of Lincoln, Nebraska. The mortgage authorized a foreclosure for any delinquent installment thereof, without prejudice to the mortgagee's right to commence future actions for the balance. On default in payment of two early installments, foreclosure was commenced thereon, and a judgment and decree of foreclosure entered in favor of the Lincoln Joint Stock Land Bank for the amount of the delinquent installments. Special execution was issued and the land sold to the Lincoln Joint Stock Land Bank on September 3, 1930, for $2,987.30, and a sheriff's certificate was issued therefor.

On September 12, 1930, an affidavit on behalf of the Lincoln Joint Stock Land Bank was filed with the clerk of the district court

of said county, showing payment of $582.74 for the last half of the 1929 taxes. This was entered by the clerk in the incumbrance and sale record books of said county.

On April 23, 1931, another affidavit was filed with the clerk, on behalf of the Lincoln Joint Stock Land Bank, mortgagee, showing payment of $521.25 for the first installment of the 1930 taxes. This was also entered in the incumbrance and sale record books of said county.

On default of subsequent installments, a second action was commenced on March 11, 1931, by the mortgagee against Williams, the mortgagor, to foreclose the mortgage for the entire amount due thereon.

On March 11, 1931, the Lincoln Joint Stock Land Bank, mortgagee, assigned its sheriff's certificate of sale and the balance due on the entire mortgage in question to F. W. Van Druff, appellee herein, who was substituted party plaintiff in the second foreclosure action.

On September 2, 1931, being the last day for redemption from the sheriff's sale in the first foreclosure action, B. A. Gronstal, appellant herein, purchased said property for himself and the attorneys representing him in this action for the sum of $100. On the same day he, on behalf of himself and co-owners, went to the clerk's office and voluntarily paid the clerk the sum of $4,391.36 in redemption of the sale made under the first foreclosure. This amount included all costs and the two installments of taxes above referred to, amounting to $1,164.21. All of this redemption money remained in the clerk's office until November 16, 1931, when it was turned over to appellee, F. W. Van Druff, the defendant herein, as assignee of the Lincoln Joint Stock Land Bank.

The present action is brought to recover the tax moneys paid to the clerk of the district court and by him delivered to the defendant herein. The lower court found against appellant herein, and dismissed his petition. Hence this appeal.

It is conceded that Mr. Gronstal, the appellant, paid in the money to effect a redemption, voluntarily, with a full knowledge of all the facts, and without any mistake, fraud, or compulsion. On this matter appellant testified:

"I brought it down and paid it to the Clerk. Mr. Van Druff did not ask me to make redemption. The Clerk did not ask me to pay the money. In other words, I did it because I wanted to. Mr.

Kistle, Mr. Roadifer, and Mr. Wright were interested with me financially when I purchased the real estate from Marshall J. Williams. They were acting also as my attorneys in the matter. At the time I made redemption and paid in the money to the Clerk on the 2nd, of September, 1931, *I knew at that time that there was included in the money I paid in * * * redemption certain taxes that had been paid on the real estate and the Clerk figured those in for the amount to redeem. I knew those items of taxes were in the amount that I paid and were figured in.* I did not tender any other amount than the amount I paid in. While the money remained in the hands of the Clerk, I did not institute any action in court to determine the question of whether I should pay those taxes in as part of the redemption."

The evidence shows without dispute that appellant knew that the amounts included for the taxes of 1929 and 1930 were paid by the Lincoln Joint Stock Land Bank. Appellant also knew that the amount of these taxes was included in the amount paid in redemption of the first foreclosure sale.

No claim is made in this action that said redemption money was paid through any mistake, fraud, or compulsion. It is not even claimed that the money was paid under protest. The evidence shows that this money was paid, not only voluntarily, but intentionally, without any compulsion, and for the very purpose of redeeming the real estate from the first foreclosure sale, and secure a clear title in the property to plaintiff.

Appellant, after acquiring title to the property, and while the second foreclosure action was pending, intervened in that action, joined in the defendant's answer, and as a special defense alleged that the first foreclosure action constituted an adjudication and was a complete defense thereto, because the Lincoln Joint Stock Land Bank could not split their cause of action. The lower court overruled that defense, and Gronstal appealed to this court, which sustained the lower court in Lincoln Joint Stock Land Bank v. Marshall J. Williams, 216 Iowa 659, 246 N. W. 841.

The evidence shows without conflict that, at the time this property was redeemed, appellant had acquired title thereto, and that the taxes so paid relieved his property of the lien thereon.

The second foreclosure suit was commenced in March, 1931. At that time there was no redemption from the first foreclosure sale. In the second foreclosure action, the Lincoln Joint Stock Land

Bank also claimed the amount of taxes paid by it for the second half of 1929, amounting to $582.74. As these taxes were later paid by the redemption of the property, they could not be recovered again.

Appellant contends that because this amount was included in the judgment prayed for in the second action, it should not have been included in the amount required to redeem from the sale under the first foreclosure. The evidence shows, however, that the Lincoln Joint Stock Land Bank was the owner and holder of the sheriff's certificate of sale when it paid the taxes of 1929, and that appellee was the owner and holder of said certificate when the redemption was made. Under these facts appellee was entitled to have said taxes included in the amount necessary to redeem from that sale. Sections 11797 and 11798 of the Code of 1931.

Code section 11797, provides that:

"The holder of a sheriff's sale certificate * * * after the delinquency of any taxes * * * upon payment by him * * * shall have a lien upon said real estate for such expenditures * * * of equal priority with the lien so held by him upon his filing with the clerk * * * a verified statement of said expenditures," etc.

Code section 11798, provides that:

"When such advancements have been made by the holder of a sheriff's sale certificate the sum so advanced shall be a part of the amount required to redeem from said sheriff's sale."

Under these statutes, the mortgagee was clearly authorized to pay the taxes of 1929, and have them included as part of the amount required to redeem from the first foreclosure sale.

Appellant also contends that, because the Lincoln Joint Stock Land Bank transferred all its interest in the sheriff's certificate of sale and the mortgage to appellee, Van Druff, in March, 1931, and before the 1930 tax of $521.25 was paid by said bank, such taxes should not have been included in the amount required to redeem from the first foreclosure sale, as the bank was not then the owner and holder of the sheriff's sale certificate or mortgage.

This second payment of taxes was, no doubt, made for and on behalf of the holder of the Sheriff's sale certificate, and inured to the benefit of the bank's assignee, although the payment was made after that bank had assigned the certificate and mortgage to ap-

1390

pellee. We are, therefore, not prepared to hold that the taxes so advanced by the mortgagee bank should not have been included in the amount required to redeem said property from the sale under the first foreclosure proceedings.

 Appellee contends that it is immaterial whether this or any of the taxes paid should have been included in the amount necessary to redeem under the first foreclosure sale, because the money paid in redemption thereof was voluntarily paid by appellant, without any compulsion, and through no mistake, fraud, or compulsion, *and with a full knowledge of all the facts.*

The undisputed evidence shows that the redemption money, including the amount paid for taxes, was paid by appellant voluntarily, willingly, without compulsion, through no mistake, and for the very purpose of having all the money so paid used in redemption of the property from the first foreclosure sale. With these facts in mind, we turn to a consideration of the law bearing thereon.

It has been the settled law of this state for over seventy years that where money is paid voluntarily, without any compulsion and without any promise to repay, it cannot be recovered by the payor. As supporting this rule, see Kraft v. City of Keokuk, 14 Iowa 86; Dickerman v. Lord & Smith, 21 Iowa 338, 339, 89 Am. Dec. 579; Morris v. County of Sioux, 42 Iowa 416; Murphy et al. v. Creighton, 45 Iowa 179; City of Muscatine v. Keokuk Northern Line Packet Co., 45 Iowa 185; Baldwin v. Foss, 71 Iowa 389, 32 N. W. 389; Painter v. Polk County, 81 Iowa 242, 47 N. W. 65, 25 Am. St. Rep. 489; Weaver v. Stacy, 93 Iowa 683, 62 N. W. 22; Manning v. Poling, 114 Iowa 20, 83 N. W. 895, 86 N. W. 30; Anderson v. Cameron, 122 Iowa 183, 97 N. W. 1085.

In Kraft v. City of Keokuk, 14 Iowa 86, this court held that taxes voluntarily paid under an *invalid law* cannot be recovered.

In Morris v. County of Sioux, 42 Iowa 416, loc. cit. 417, this court said:

"The taxes having been paid before the sale, it was void. No duty or obligation rested upon plaintiff to redeem therefrom. His title was not imperiled by the sale, and for its protection he was not required to redeem. His payment for the purpose of redemption was, therefore, entirely voluntary and under a familiar rule of the law is not a foundation of an action for the money so paid."

In Murphy v. Creighton, 45 Iowa 179, loc. cit. 183, this court said:

"A careful examination of the evidence in this case discloses an utter failure on the plaintiffs' part to show that the payment in question was made under any mistake whatever," and announced the rule as follows: "If a party, with full knowledge of all the facts in the case, voluntarily pays money in satisfaction or discharge of a demand unjustly made upon him, he cannot afterwards allege such payment to have been made by compulsion and recover back the money. * * * In such case, if the party would resist the unjust demand, he must do so upon the threshold. The parties treat with each other on equal terms, and if litigation is intended by the party of whom the money is demanded, it should precede payment." The same rule is announced in City of Muscatine v. Keokuk Northern Line Packet Co., 45 Iowa 185.

In Weaver v. Stacy, 93 Iowa 683, loc. cit. 690, 62 N. W. 22, 24, this court held that where a redemption was made from a sheriff's sale under an execution *on a judgment which was later reversed,* the money paid in redemption of said property, having been paid voluntarily, could not be recovered. In that case we said:

"That she was uncertain whether the decree of the district court would be reversed did not affect her legal rights. She paid the money to redeem out of abundant caution to protect her interests, but in doing so incurred the risk of paying it unnecessarily. * * * There was no mistake of fact, compulsion, nor fraud, and the plaintiff cannot recover the money so paid."

In Dickerman v. Lord & Smith, 21 Iowa 338, loc. cit. 342–344, 89 Am. Dec. 579, this court, speaking through Justice Dillon, said:

"To justify recovering back money paid, when all the facts were known to the party paying, such payment must not have been simply an unwilling payment, but a compulsory one, and the compulsion must have been illegal, unjust or oppressive. * * * If I am sued, * * * and know the claim is unfounded and yet pay the money, I cannot recover it back although I may, at the time of payment, have said, I paid it under protest. * * * I cannot pay the amount, and by simply saying, I do so under protest, afterward re-open the question. When one pays money on an alleged claim against him, he is forever concluded from saying he did not owe it, if he paid under no mistake of fact, and if the party receiving it made use of no illegal means to coerce the payment. * * * A

party who has paid voluntarily under a claim of right shall not afterward recover back the money, although he protested at the time against his liability."

The case of Manning v. Poling, 114 Iowa 20, 83 N. W. 895, 896, 86 N. W. 30, is almost identical in its facts with the case at bar. That was a case in which a party had redeemed land sold on a judgment under a claim later held to be invalid, and the judgment was reversed. It was there held that the party redeeming could not afterwards recover the money paid in redemption. In that case the party redeeming paid in the money *under protest.* This court there said:

"The only point now made is that the payment in redemption of the judgment sale was voluntary, and may not, for that reason, be recovered. * * * In Lyman v. Lauderbaugh, 75 Iowa [481] 484, 39 N. W. 812, this court declared, 'Such payment must not have been simply an unwilling payment, but a compulsory one; and the compulsion must have been illegal, unjust, and oppressive.' It is often difficult to determine what will amount to coercion sufficient to render payments involuntary. A very accurate, and at the same time comprehensive, statement of the rule will be found in Brumagim v. Tillinghast, 18 Cal. 265, 79 Am. Dec. 176, by Justice Field: 'It may be said in general that there must be some actual or threatened exercise of power possessed, or supposed to be possessed, by the party exacting or receiving the payment, over the person or property of the party making the payment, from which the latter has no other means of immediate relief than by advancing the money.' [Citing cases] The result of all the authorities is that the party making payment must be put to his choice between the comparative evils of the inconvenience and loss by the detention of his property, and the payment of an unjust and illegal demand. * * * *For, if there be other adequate means of escaping the imminent infringement of property rights, these should be resorted to, rather than that litigation be postponed by the payment of the controverted claim.* [Italics ours.] * * * In Morris v. County of Sioux, 42 Iowa 416, and Sears v. Marshall County, 59 Iowa 603, 13 N. W. 755, redemption of land from a void tax sale was adjudged voluntary because the owner was not put to his choice; the title not being in peril, and no payment required for its protection. * * * But was Ferguson driven to the stress of redeeming or being ousted of his possession? The appellant asserts that two other remedies were

open to him. It seems that, soon after the execution on the judgment had issued, Ferguson sued out a temporary writ of injunction, restraining the sale of the land; and afterwards, on motion, this was dissolved, and his petition dismissed. * * * Ferguson might have protected his possession by a restraining order from this court. * * * No doubt is entertained of this court's authority, by appropriate orders, to continue the parties, with respect to the property in litigation, in statu quo, while the action is pending here on appeal. * * * An injunction may be the very object of the suit, * * * and so a provisional injunction during the pendency of the suit may be necessary for the purposes of justice. The power to allow these is a part of the appellate. jurisdiction, the grant of which is authorized by the constitution, and has been made by the law. * * * Here the remedy through a restraining order was simple and speedy, and afforded full protection. No reason has been suggested for not resorting to it."

The same rule was followed in Anderson v. Cameron, 122 Iowa 183, loc. cit. 184, 97 N. W. 1085, 1086, where it was held that the money voluntarily paid in redemption from the sale of the lots under special assessment with knowledge of the facts cannot be recovered on the ground of the invalidity of the assessment, although the money was paid in under protest. This court there said:

"The sole question * * * is, does plaintiffs' petition show that the payment was compulsory, or made under such circumstances as that he may recover the amount thereof from * * * the tax sale purchaser? The rule is well settled that money voluntarily paid under a claim of right and with full knowledge of the facts on the part of the person making the payment cannot be recovered back on the grounds that the claim was invalid or nonenforceable. [Citing cases]. The mere fact that one protests * * * that he is not legally bound to make such payment does not change the rule. * * * Unless there be some rule peculiar to the payment of taxes under protest, it is manifest from the authorities hitherto cited that plaintiffs cannot recover, for neither the defendant nor the city was attempting by distress or otherwise to collect the tax at the time the payment was made."

The reason for the rule announced in this line of cases is that the party seeking to redeem had an opportunity at that time of litigating the question of his liability for the amount required

for redemption. This question could have been settled and appellant's rights protected by injunction proceedings or by additional rights now afforded redemptioners by sections 11791 and 11792 of the Code of 1931, under which the redemptioner could have had his rights fully protected.

No such action was taken by appellant although the funds paid in redemption of said property remained in the hands of the clerk for two and one-half months before it was paid to appellee. The instant case is stronger than the cases hereinabove referred to, in the fact that appellant herein not only failed to make a protest, but freely, willingly, and voluntarily made the redemption at his own request, with full knowledge of all the facts, and without making any objection or attempt to litigate the correctness of the amount paid at that time. In this case there are not even any equitable circumstances under which appellant might be entitled to recover any part of the money paid. The amount claimed was paid by the mortgagee in payment of taxes on appellant's property. The taxes were a lien against property owned by appellant at the very time the redemption was made by him. If he had been successful in his defense against the second foreclosure action, or if he had redeemed from a judgment of foreclosure therein, he would have had the full benefit of the taxes so paid.

It is our conclusion that appellant had an adequate remedy by injunction, or under the statutes cited, to protect himself from the payment of any invalid or unnecessary amounts included in the amount required by the clerk for redemption. The question of appellant's liability to pay the taxes in question could have been determined in the manner hereinabove suggested. This was not done, and the action to recover the taxes was not commenced until after the second foreclosure case was decided adversely to appellant in the supreme court. The facts show that the payments in question were voluntarily made by appellant, without compulsion of any kind, and through no force, fear, fraud, or mistake. It is therefore our conclusion that the moneys so paid cannot be recovered in this action.

For the reasons hereinabove set out, we think the action of the lower court in refusing recovery is right, and its judgment is therefore hereby affirmed.—Affirmed.

ANDERSON, C. J., and ALBERT, MITCHELL, DONEGAN, HAMILTON, RICHARDS, POWERS, and PARSONS, JJ., concur.