CHRISTINA R. PARKER

*vs.*

HUMPHREY N. LANCASTER, and another.

Waldo.    Opinion June 2, 1892.

*Payment.   Duress.   Compromise.*

Money voluntarily paid cannot be recovered back.

Money obtained by fraud or duress, or under such circumstances of oppression actual or threatened, as renders it unconscionable for the one receiving it to retain it, may be recovered back.

When one demands money under a claim of right, and uses no other means to obtain it than importunity and persistency, or a threat expressed or implied, of resort to litigation to obtain it if it is not voluntarily paid, and the one of whom the money is demanded has time for consideration and deliberation, and to obtain the advice of counsel or friends, and the money is then voluntarily paid to settle the demand, it cannot be recovered back, though the demand is illegal and unjust.

The law favors the compromise of doubtful claims, and does not allow settlements arrived at by mutual concessions to be lightly set aside.

When both parties possess equal knowledge of the facts, or possess equal means of obtaining such knowledge, and one of them voluntarily pays a claim made against him by the other, the money so paid cannot be recovered back.

ON MOTION.

This was an action of assumpsit, in which the plaintiff recovered a verdict of one hundred and sixty-one dollars and thirty-six cents for money, and interest thereon, which she claimed that she had left in the hands of the defendants to be paid by them to one Marshall, and that they had never paid it to him.

The plaintiff is executrix of Henry S. Parker, deceased, who had been a partner with the defendants, and was cashier and general business manager of the firm.    It appeared that, before Parker's death, June 14, 1880, one Malady was an employee of the firm and lived in a house belonging to Marshall, and the firm was responsible to him for the rent.    At the time of Parker's death, there was due to Marshall from the firm on account of Malady's rent, the sum of one hundred and fifty-five dollars.    February 15, 1883, after several days' negotiations, in which the parties were assisted and represented by their counsel, a settle-

ment of the partnership business was effected, the plaintiff having previously sold her interest in the firm to the defendants, who assumed all its debts, etc.

During this settlement, the defendants claimed that Parker in settling with Malady, from time to time, had deducted from his wages the full amount of the rent due Marshall, but in his account with the firm had charged it with the full amount of these wages; also, inasmuch as Parker had charged the firm with one hundred and fifty-five dollars, as paid to Malady, which he had not in fact paid, either directly or indirectly, he had in hand money of the firm to that amount, and the plaintiff in the settlement should account therefor.

The claim, as above stated, was allowed by the plaintiff, and she paid the defendants three hundred and forty dollars, upon compromise of this and other claims. Date of writ, February 15, 1889.

*R. W. Rogers*, for plaintiff.

Defendants admit that they deducted, and retained this sum that they otherwise would have paid plaintiff, expressly and solely in consequence of the Marshall bill, with her consent, and as a provision by her for its payment; and do not pretend that they ever paid it over, yet contend that it was all part and parcel of a general settlement. Plaintiff understood from the defendants that this was a matter wholly between herself and Marshall, and not between her and them. She states it as follows:

" They said that my husband did the business and that I was personally holden for this bill; that it had been credited to the company and they were free from it, but that I was personally held for the bill to Mr. Marshall. With this understanding, and upon the representation of Mr. Harriman, I paid the one hundred and fifty-five dollars."

February 15th, 1883, the Marshall bill had been barred by the six years statute of limitations for more than three years; and further, all claims against Henry S. Parker's estate, had been barred more than two years and six months.

The misrepresentation was a fraud upon the plaintiff, and

would have vitiated a settlement, had there been one, and entitled her to recover back the money.

*W. H. Fogler, J. S. Harriman* with him, for defendants.

February 15, 1889, just six years after the settlement was made, when the books of the firm had been destroyed by fire, the plaintiff sues the defendants for the sum of one hundred and fifty-five dollars. She claims to go behind the settlement and to recover back a portion of the amount which she allowed the defendants upon final settlement. She does not deny that her husband, in fact, withheld money from Malady's wages to the full amount claimed; nor does she claim that her husband ever paid the rent or otherwise ever accounted to the firm or to any one for the money. Nor does she deny that the firm was indebted to Marshall to the amount claimed.

But if she did not understand the exact nature of the claim, the fact remains that her husband, at the time of his death, had money in his hands that belonged to the firm, and this money was the basis of the claim made by the defendants and properly included in the settlement. The plaintiff has neither paid, nor been called upon to pay any money to Marshall or any one else on account of the Malady rent since the settlement. The fact that there has been no final settlement between Marshall and the defendants does not prejudice the plaintiff. That is a matter which only concerns the defendants and Marshall. It appears from Marshall's testimony that there is an understanding that bills of the firm, of which the defendants are now sole owners, against certain members of Marshall's family are to be allowed in settlement.

The parties made a final settlement and passed receipts. The settlement so made must stand unless it is shown that it was procured through mistake or fraud. The burden of proof is upon the plaintiff.

When a compromise takes place and receipts are given as final discharges between the parties, upon deliberate consideration and good faith, there is the greatest ground for upholding them. *Cunningham* v. *Batchelder*, 32 Maine, p. 318.

WALTON, J.   This is an action to recover back money paid
by the plaintiff, as executrix, to settle a claim against the estate
of her deceased husband.   She has obtained a verdict for one
hundred and fifty-five dollars, and interest from the date of her
writ; and the only question is whether the verdict is not so·
clearly wrong as to require the court to set it aside.   We think.
it is.

It is a settled rule of law that money voluntarily paid cannot
be recovered back.   Money obtained by fraud, or duress, or·
under such circumstances of oppression, actual or threatened, as·
renders it unconscionable for the one receiving it to retain it,.
may be recovered back.   But when one demands money under·
a claim of right, and uses no other means to obtain it than
importunity and persistency, or a threat, expressed or implied,.
of resort to litigation to obtain it if it is not voluntarily paid,.
and the one of whom the money is demanded has time for con-
sideration and deliberation, and to obtain the advice of counsel
or friends, and the money is then voluntarily paid to settle the·
demand, it can not be recovered back, though the demand is
illegal and unjust.   The reason of the rule is obvious.   If a
claim is to be litigated at all, it ought to be litigated promptly.
By delay, the recollection of witnesses is liable to become
indistinct, and documentary evidence is liable to become lost
or destroyed, and witnesses are liable to die.   And on many
accounts, it may be important to the claimant to have the
validity of his claim determined promptly and without delay ; and
if the other party should be allowed to pay a claim first and then
litigate it afterwards, it would give him the power to select his
own time for the litigation ; and, by delaying it, to place his
adversary at a great disadvantage.   Hence, the rule that while
compulsory payments, if illegal and unjust, may be recovered
back, voluntary payments can not be.   The law favors the
compromise of doubtful claims, and does not allow settlements
arrived at by mutual concessions to be lightly set aside.   As
said in *Barlow* v. *Ins. Co.* 4 Met. 270, "to disturb such settle-
ments, instead of promoting the ends of justice, would enlarge
the field of discord, and raise new obstacles to compromises, and

be a just cause of regret." A lawyer can render no more valuable service to his client, and none for which he should be better paid, than when, by his efforts, he succeeds in procuring the settlement of a controversy without litigation.

In *Rawson* v. *Porter*, 9 Greenl. 119, a suit was compromised before entry in court, and the plaintiff's attorney taxed as part of his costs a commission of two and a half per cent on the debt. The attorney had no legal right to charge such a commission to the debtor, and the court so held. And it appeared that the reasonableness of the charge was much discussed between the attorney and the debtor, the former affirming it and the latter denying it. But the debtor was anxious to obtain a release of the attachment of his property, and, although at first refusing, he finally paid the amount claimed, including the two and a half per cent commission, and afterward commenced the action to recover back the amount of the commission. But the court held that the action was not maintainable; that there was no such fraud, imposition, deceit, compulsion, oppression, or extortion, as would justify him in repudiating the compromise, and enable him to recover back the money which he had thus voluntarily paid.

In *Smith* v. *Readfield*, 27 Maine, 145, the rule is stated to be that when money is claimed as rightfully due, and is voluntarily paid, it can not be recovered back. And in *Gooding* v. *Morgan*, 37 Maine, 419, Chief Justice SHEPLEY stated the rule as follows: "The law is regarded as settled in this State, if one with full knowledge of all the facts, or with the means of knowledge, voluntarily pays money, under a claim of right, that he can not recover it back." In *Fellows* v. *School District*, 39 Maine, 559, Mr. Justice RICE stated the rule to be that, "where money is claimed as rightfully due, and is paid voluntarily, and with a full knowledge of all the facts in the case, it can not be recovered back, if the party to whom it has been paid may conscientiously retain it."

As definitions, perhaps neither of these statements is entirely accurate. It seems to us, that it would be a nearer approach to a correct statement of the rule to say that when both parties

possess equal knowledge of the facts, or possess equal means of obtaining such knowledge, and one of them voluntarily pays a claim made against him by the other, the money so paid can not be recovered back. The fact must not be overlooked that jump settlements and compromises of doubtful claims are often made for the express purpose of avoiding the trouble of investigating the facts; and if such compromises or settlements are deliberately and understandingly agreed to, neither party should be allowed to plead ignorance of the facts as a ground for avoiding them. Whether, in any case, ignorance of the law is a sufficient ground for recovering back money paid in consequence of such ignorance, is a question in relation to which the decisions are conflicting. It has been held in this State that it is not.

In *Norris* v. *Blethen*, 19 Maine, 349, money had been paid apparently in ignorance of the law and in ignorance of a material fact, and the court held that it could not be recovered back. In that case, a receiptor for property attached paid its value to a deputy sheriff in ignorance of the fact that the property had not been demanded within thirty days from the rendition of judgment, and in ignorance of the rule of law that his liability was thereby discharged; and the court held that the payment having been voluntary it could not be recovered back. The court admitted that it might be regarded as a hard case, but denied that the decision was open to the charge of being unjust, for the reason that justice can only be answered by adhering to the rules of law, without bending them to accommodate what are called hard cases; that one may suffer serious loss through ignorance of the law, and yet have no just cause to charge the law with injustice.

In the case now under consideration, the plaintiff's husband had for several years before his death been a partner with the two defendants in the livery business; and they claimed that he died indebted to the firm. They claimed that, at the time of his death, he had in his hands one hundred and fifty-five dollars, of the firm's money with which to pay a bill due to William C. Marshall for the rent of a house which had been occupied by

one of the employees of the firm, and for which the firm had.
agreed to be responsible; and that not having used the money
for that purpose, his estate was indebted to the surviving part-
ners for that amount.   There was no pretense that the deceased
partner had paid the rent, and the only question was whether
he had the money in his hands with which to pay it at the time
of his death.   The surviving partners claimed that he had, and
the executrix was not satisfied of the justice of the claim.   Both
parties employed counsel.   The counsel examined the books
carefully, and we infer from their testimoney that they became
satisfied that the claim was a just one.   Still, the plaintiff
refused to allow it, and the defendants refused to settle unless
she would allow it.   But, finally, they compromised.   The.
defendants surrendered some other claims, and the plaintiff con-
sented to allow this; and she paid them three hundred and
forty dollars in full of all claims of the surviving partners against
the estate of her deceased husband, and assigned to them all the
estate's interest in demands due to the firm, and they gave her
an indemnity against all demands due from the firm.

Thus matters stood for six years.   And during that time the
account books of the firm were accidentally destroyed by a fire,
and the recollection of the witnesses had become indistinct by the
lapse of so much time.   But the plaintiff seems to have never been
entirely satisfied with the settlement; and, at the end of six
years, she commenced this suit to recover back one hundred
and fifty-five dollars of the three hundred and forty dollars paid
by her, and, as already stated, has obtained a verdict for that
amount and interest from the date of her writ.

The plaintiff's counsel does not controvert the general rule of
law that money voluntarily paid can not be recovered back, but
he endeavors to rescue his client's case from the operation of
the rule by claiming that the one hundred and fifty-five dollars
was delivered to the defendants, not as a payment, but as a
deposit merely; that the money was left in their hands to be
paid by them to Marshall, and that they have never paid it to him.

The transaction will not bear this construction.   Some of the
plaintiff's answers, if standing alone, are susceptible of an

interpretation which would sustain this hypothesis. But even her testimony, when examined as a whole, shows conclusively that the money sued for was left with the defendants, not as a deposit, but as a payment. And the testimony of her other witnesses, including the testimony of Messrs. Thompson and Dunton, who acted as her attorneys at the time of the settlement, shows conclusively that it was a payment.

One other ground on which the plaintiff's counsel endeavors to hold the verdict is that the plaintiff was induced to pay the one hundred and fifty-five dollars by the misrepresentation of the defendant's attorney; that he represented to her that the Marshall bill was a valid and enforceable claim, when in fact it was barred by the statute of limitations. We do not think this is an available ground for sustaining the verdict. The representation, if made, was not important. If Marshall's bill was not enforceable, that fact might have furnished the deceased partner with an excuse for not paying it, but it could furnish him with no excuse for not returning the money which he held with which to pay it. It neither strengthened nor weakened the defendant's claim against the estate of the deceased partner, and was therefore wholly unimportant. Besides, it was not the assertion of any particular fact. It was no more than the expression of an opinion on a question of law, and, for that reason, could furnish the plaintiff with no valid ground for rescinding the settlement. And, furthermore, the plaintiff, in making the settlement, had the assistance of able, faithful and experienced counsel, and it is in the highest degree improbable that either she or her counsel relied upon the opinion of the adverse counsel as to the validity or invalidity of either Marshall's claim against the firm, or of the firm's claim against the estate of the deceased partner. The settlement was one which, as it seems to us, was exceedingly desirable for the parties to make. It included not only the matter of the Marshall claim, but many other matters. It was, in fact, a compromise settlement of all matters between the parties. And the evidence leaves no doubt that the settlement was an entirety; and that it must stand or fall as a whole; that the law will not allow either party to affirm it in part and

disaffirm it in part. And it seems to us that the evidence fails utterly to disclose any ground on which either of the parties can rightfully disaffirm or rescind it in whole or in part; and we are forced to the conclusion that the verdict must be regarded as clearly and unmistakably wrong; and that it is the duty of the court to set it aside and grant a new trial.

*Motion sustained. New trial granted.*

PETERS, C. J., EMERY, FOSTER and HASKELL, JJ., concurred.