STATE v. ZOPHY.

Sess. Laws 1897, Chap. 72, imposing an annual tax on parties without the the state who have wholesale establishments for the sale of liquors in this state, to be paid in every precinct, township, or city where they have such wholesale establishments, and providing that manufacturers of such liquors within the state shall pay a certain manufacturer's

license, and be exempt from the payment of the wholesale tax, is unconstitutional, as in conflict with Const. U. S. Art. 1, § 8, giving congress power to regulate commerce among the states.

(Opinion filed December 5, 1900.)

Error to circuit court, Brown county.

Edward Zophy was convicted of selling liquor at wholesale without a license, and brings error. Reversed.

The facts are stated in the opinion.

*E. T. Taubman* and *L. W. Crofoot,* for plaintiff in error.

Any discrimination made by a state, in favor of its domestic products, as against the products of other states, amounts to a regulation of interstate commerce, whether the state claims to be acting under its police power, or under its power of taxation. Welton v. Missouri, 91 U. S. 275; Cook v. Pennsylvania, 97 U. S. 566; Guy v. Baltimore, 100 U. S. 434; Tiernan v. Rinker, 102 U. S. 123; Webber v. Virginia, 103 U. S. 344; Walling v. Michigan, 116 Mich. 446; Robbins v. Taxing Dis. Shelby Co., 120 U. S. 489; Corson v. Maryland, 120 U. S. 502; Lyng v. People of Michigan, 136 U. S. 161; Minnesota v. Barber, 136 U. S. 313; Brimmer v. Redman, 138 U. S. 78; Voight v. Wright, 141 U. S. 62; Osborne v. Florida, 164 U. S. 650; Scott v. Donald, 165 U. S. 58, 100.

*John L. Pyle,* Attorney General, *J. H. Perry,* States Attorney, for defendant in error.

CORSON, J. Upon an information filed by the state's attorney of Brown county, charging the plaintiff in error with the crime of selling malt and brewed liquors at wholesale without a license, he was tried and convicted, and brings the proceeding before this court for review upon writ of error. It appears from the evidence on the part of the prosecution that the plaintiff in error was the agent of the Theo. Hamm Brewing Company, a corporation or-

ganized and existing under the laws of the state of Minnesota, and having its principal place of business at St. Paul, in that state; that subsequent to the 1st day of July, 1899, he was engaged in soliciting orders for malt and brewed liquors for that corporation; and that the orders were filled by shipping the products of the brewery to a warehouse owned by said corporation, located at Aberdeen, in said Brown county, and from there delivered to the various customers from whom orders had been taken. The state's attorney admitted that the brewing company was a corporation having its manufactory located in the city of St. Paul, in the state of Minnesota, and that the only beer that was in the warehouse at Aberdeen was the product of the manufactory of said company at St. Paul. Thereupon the plaintiff in error moved the court to advise the jury to return a verdict of not guilty, upon six grounds, the fifth of which, and the only one we shall consider, is as follows: "Because the law under which the information is framed, being Chapter 72 of the Laws of South Dakota for the year 1897, so far as it relates to nonresident manufactures, is unconstitutional, in that it makes an unjust discrimination against nonresident manufacturers of brewed and malt liquors, and is contrary to the provisions of the constitution of the United States in reference to the control of commerce between the states, for the reason that said act imposes no wholesale dealers' tax or license upon the product of beer manufactured within this state." The court denied the motion, and subsequently the question of the constitutionality of the law was raised by requests on the part of the plaintiff in error to instruct the jury, which were also denied, and by exceptions to the instructions given.

It is contended on the part of the plaintiff in error that that part of the law requiring a wholesale dealer in malt and brewed liquors not manufactured within this state to pay a license fee of $600, while

the wholesale dealer and manufacturer of liquors within this state
is not required to pay a license for selling the same at wholesale,
is an unjust discrimination against dealers whose manufactories
are situated in other states, and is in violation of Section 8 of Article
I of the Constitution of the United States, and that that part of the
act is therefore void. It is provided by Section I of the act en-
titled "An act to provide for the licensing, restriction and regula-
tion of the business of the manufacture and sale of spirituous and in-
toxicating liquors," approved March 3, 1897, (being Chapter 72,
Sess. Laws 1897), that: "In all townships, precincts, towns and cit-
ies of this state, there shall be annually paid the following license
upon the business of manufacturing, selling or keeping for sale by
all persons whose business in whole or in part consists in selling or
keeping for sale or manufacturing in this state distilled, brewed or
malt liquors, or mixed liquors, as follows: * * * Upon the
business of selling only brewed or malt liquors at wholesale, six
hundred dollars ($600) per annum, said license to be paid in each
township, precinct, town or city in which said wholesaler has or op-
erates a warehouse or depository; * * * upon the business
of manufacturing brewed or malt liquors for sale
four hundred dollars ($400) per annum. * * * No
person, firm or corporation paying a manufacturer's license in this
state on brewed or malt liquors under this act shall be liable to pay
a wholesale dealer's license on the product of such manufactory.
A person, firm or corporation shall pay the license herein provided
in as many different places as he carries on business." By Section 5
of the act severe penalties are provided for the violation of the pro-
visions of said section I. It will be noticed by the provisions of Sec-
tion I that any person engaged in the manufacture in this state of
brewed or malt liquors who shall have paid the license therefor of

$400 is not required to pay any wholesale dealer's license, and that under the act he may establish as many warehouses within the state as he may desire, without the payment of any wholesale dealer's license, while a party who manufactures brewed or malt liquors without the state, and desires to establish warehouses and wholesale establishments within the state, is required to pay a license fee of $600 in every precinct, town, and city in which he may establish such warehouse or depository for the sale of such brewed and malt liquors. Thus it will be seen that the law favors the home manufacturer, and imposes a burden upon parties manufacturing without the state not imposed upon home manufacturers. To repeat, the home manufacturer, after paying his manufacturer's license of $400, may open warehouses or depositories for wholesale in every precinct town and city within the state without the payment of any further license fee, while the manufacturers without the state are required to pay a license fee of $600 in every precinct, town, and city within the state in which they may establish a wholesale warehouse or depository. To prevent such discrimination, the constitution of the United States provides: "The congress shall have power: * * * To regulate commerce with foreign nations, and among the several states, and with the Indian tribes; to make all laws which shall be necessary and proper for carrying into execution the foregoing powers." Article 1, § 8. One great objection to the operation of the government under the articles of confederation was that it left the several states with the power to impose burdens upon interstate commerce, and to discriminate in favor of their own citizens as against the citizens of other states and it was this power, thus to discriminate, more than any other, that induced the people of the states to abrogate the articles of confederation, and establish in their place the present constitution, in which the power is given to

congress to regulate commerce, not only with foreign nations, but among the several states. In one of the early cases in which this clause of the constitution was involved, Mr. Webster, in addressing the court, said: "Over whatever other interests of the country this government may diffuse its benefits and blessings it will always be true, as matter of historical fact, that it had its immediate origin in the necessities of commerce; and for its immediate object, the relief of those necessities, by removing their causes, and by establishing a uniform and steady system." This section of the constitution has received as much consideration from the courts as, and perhaps more than, any other one section of that instrument; for the history of the decisions of the supreme court of the United States conclusively shows the tendency of the state governments to discriminate in favor of their own citizens as against the citizens of other states. It seems to be well established that any discrimination made by a state in favor of its domestic products, manufactured or grown within the state, as against the products of other states, amounts to a regulation of interstate commerce, whether the state claims to be acting under its police power or under its power of taxation, and is a violation of the clause of the constitution we are now considering. In Guy v. Baltimore, 100 U. S. 434, 25 L. Ed. 743, the supreme court of the United States, after reviewing the decisions upon this subject previous to that time, speaking by Mr. Justice HARLAN, said: "In view of these and other decisions of this court, it must be regarded as settled that no state can, consistently with the federal constitution, impose upon the products of other states, brought therein for sale or use, or upon citizens because engaged in the sale therein, or the transportation thereto, of the products of other states, more onerous public burdens or taxes than it imposes upon the like products of its own territory." The rule as here stated has been steadily and

uniformly adhered to by the supreme court of the United States. Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 347; Cook v. Pennsylvania, 97 U. S. 566, 24 L. Ed. 1015; Guy v. Baltimore, *supra;* Tiernan v. Rinker, 102 U. S. 123, 26 L. Ed. 103; Webber v. Virginia, 103 U. S. 344, 26 L. Ed. 565; Walling v. People, 116 U. S. 446, 6 Sup. Ct. 454, 29 L. Ed. 691; Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; Corson v. Maryland, 120 U. S. 502, 7 Sup. Ct. 655, 30 L. Ed. 699; Lyng v. Michigan, 135 U. S. 161, 10 Sup. Ct. 725, 34 L. Ed. 150; Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, 34 L. Ed. 455; Brimmer v. Redman, 138 U. S. 78, 11 Sup. Ct. 213, 35 L. Ed. 862; Voight v. Wright, 141 U. S. 62, 11 Sup. Ct. 855, 35 L. Ed. 638; Osborne v. Florida, 164 U. S. 650, 17 Sup. Ct. 214, 41 L. Ed. 586; Scott v. Donald, 165 U. S. 107, 17 Sup. Ct. 262, 41 L. Ed. 648. Lyng v. People, *supra,* was a case very analogous to the case at bar. The state of Michigan had passed a law providing for licensing wholesale dealers in malt and brewed liquors, requiring a license therefor of $300, and a license upon the business of manufacturing brewed and malt liquors within the state for sale of $65 per annum. The manufacturer of brewed and malt liquors made outside of the state of Michigan could not introduce his liquors into the hands of the consumers without becoming subject to this wholesale dealer's tax of $300 per annum in every township, village, and city where he attempted to do business. The manufacturer within the state, however, was required to pay only the manufacturer's tax of $65 per annum, and was then exempt from paying the tax imposed upon the wholesale dealer. In that case the court, speaking by Mr. Chief Justice FULLER, said. "We have repeatedly held that no state has the right to lay a tax upon interstate commerce in any form, whether by way of duties laid upon the transportation of the subject of that

commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden upon that commerce, and amounts to a regulation of it, which belongs solely to congress.  *  *  *  It devolves upon congress to indicate such exceptions as in its judgment a wise discretion may demand under particular circumstances.  Lyng was merely the representative of the importers, and his conviction cannot be sustained, in view of the conclusions at which we have arrived."

We shall not attempt to review the many cases that have been decided, bearing upon this question, as the case at bar presents so clearly a case of unjust discrimination against the citizens of other states that the further discussion of it seems entirely unnecessary. We are of the opinion that that part of the act referred to, imposing a license fee upon wholesale dealers whose products are manufactured without the state is clearly in conflict with the provisions of the United States constitution, and is therefore void.  The plaintiff in error, acting as the agent of the brewing company in soliciting orders for that company, committed no offense against the laws of the state, and the motion made at the close of the state's evidence should have been granted by the court.  The judgment of the circuit court is reversed, and that court is directed to discharge the plaintiff in error from further custody.