## C. & J. MICHEL BREWING CO. v. STATE *et al.*

1. Where, in an action against the state for a claim disallowed by the auditor, the Supreme Court, under Rev. Code Civ. Proc, § 27, certified the cause to a circuit court, with directions to submit the issues of fact to a jury, the parties cannot by consent confer jurisdiction on the circuit court to determine the facts, and a judgment predicated on the findings of the court is erroneous, if not void.

2. Where, in an action by a nonresident to recover taxes paid under Laws 1897, p. 203, c. 72, imposing an annual tax on nonresidents having wholesale establishments for the sale of liquors in the state, the complaint alleged that the payments were made under protest with notice that suit would be brought to recover the same, and that they were made under a mutual mistake of law, plaintiff and the state officers believing that the law imposing the tax was valid, the court, on motion, should require plaintiff to elect on which claim he will proceed, the allegations being inconsistent.

3. A nonresident paid the taxes imposed by an unconstitutional law (Laws 1897, p. 203, c. 72,) imposing an annual tax on nonresidents having wholesale establishments for the sale of liquor in the state. When the first payment was made he was represented by counsel, who insisted that the law was unconstitutional. Held, that none of the payments were made under an honest belief on the part of plaintiff that the law was valid, and hence a mutual mistake of law on his part and the officers of the state did not exist.

4. A payment by a nonresident of the taxes imposed by an unconstitutional law (Laws of 1897, p. 203, c. 72) imposing annual taxes on nonresidents for wholesale establishments for the sale of liquors in the state, made because required by the officers of the state as a condition precedent to his right to continue the sale of liquors without subjecting himself

to the penalties prescribed by the statute, is not made under duress, and cannot be recovered.

(Opinion filed April 4, 1905.)

Original action by the C. & J. Michel Brewing Company against the state and another. Judgment of dismissal on the merits.

*Joe Kirby* and *Miller & Wolf*, for plaintiff.

Where money is paid and received under a mistake of law, relief can be had in the courts of this state. State v. Zophy, 14 S. D. 119; Bruner v. Stanton, 43 S. W. 411; Bruner v. Clay City, 38 S. W. 1062; Fecheimer v. Louisville, 2 S. W. 65; Louisville v. Anderson, 79 Ky. 344.

Where the taxing officers of a state, under an unconstitutional law, by threats of imprisonment and destruction of the party's property, with apparent power to carry such threats into effect, exacts a tax, the party so paying such tax under protest and with notice to the collector that he will institute proceedings to recover such money back, can maintain an action against the state to recover such money so exacted. Whittaker v. Deadwood, 12 S. D. 608; St. Anthony, etc., Co. v. Soucie, 83 N. W. 212; Gaar, Scott & Co. v. Sorum, 90 N. W. 799; Fecheimer v. Louisville, 2 S. W. 65; Bruner v. Clay City, 38 S. W. 1062; Dexter v. Boston, 57 N. E. 379; Scottish, etc., Ins. Co. v. Herriott, 80 N W. 665; Erskine v. Van Arsdle, 15 Wallace 75; Cox v. Lott, 12 Wallace 204; Robinson v. Frank Bros., 132 U. S. 17; Lyon v. Receiver of Taxes, 17 N. W. 838; Jaggard Tax, p. 611; Shoup v. Willis, 6 Pac. 124.

*Philo Hall*, Attorney General, *(A. W. Burtt*, of counsel,) for defendants.

Generally a threat of legal process is not duress; the party

may plead and make proof and show that he is not liable.   33 Mo. 412; Mays v. Cincinnati, 1 O. St. 268; 4 Metcalf 181; Fleetwood v. City of New York, 2 Sanford Sup. Ct. Repts. 475.

Payment made under protest with full knowledge of all the facts, the money so paid cannot be recovered back, although at the time of such payment a written protest was made and served, with notice therein that the payer would immediately institute a suit to recover back the money so paid.   Rushton v. Burke, 6 Dak. 478; Powell v. Supervisors of St. Croix Co., 50 N. W. 1013; Evans v. Hughes County, 3 S. D. 244; Fellows v. School Dist., 39 Me. 559; Cunningman v. Boston, 15 Gray 468; Schultz v. Culbertson, 46 Wis. 313; Sup. Ct., 8 Rep., 285.

Haney, J.   It is established by the pleadings that the plaintiff is a Wisconsin corporation engaged in manufacturing and selling lager beer and other malt liquors; that to facilitate the sale of its manufactured products in this state it operated warehouses or depositories at Sioux Falls, Salem, and Redfield; that it paid the state as license fees, under the provisions of chapter 72, p. 203, Laws of 1897, $300, about April 29, 1897, and $1,800 about July 1st in each year from 1897 to 1900, inclusive; that no part of these sums has been repaid; and that the plaintiff's claim was presented to and rejected by the State Auditor before this action was commenced.   The law under which these license fees were collected, so far as applicable to nonresident manufacturers, was declared to be unconstitutional on December 4, 1900.   State v. Zophy, 14 S. D. 119, 84 N. W. 391.   These allegations of the complaint are denied by the answer:   "(6) That each and all of said payments so made by

this plaintiff as aforesaid were made under protest, menace, and duress, and in especially that said defendant did, through its officers and agents, threaten the unlawful confinement of the persons of the agents of this plaintiff engaged in handling its products at the cities aforesaid, and did threaten to arrest, detain and confine this plaintiff, through its agents and servants, under such unconstitutional law, and thereby such arrest and confinement would be fraudulent, harassing, and oppressive, and did threaten immediately to close up and to seize the property of this plaintiff in this state, and sell the same, and prevent this plaintiff from doing business in this state; that by such acts great and irreparable injury would have been done to the plaintiff, and in especially that its trade in its products would have been broken up and dissipated to others, and the large trade which plaintiff had by long and energetic effort on its part and expensive advertising built up would have been completely lost, the value of none of which could be with a reasonable degree of certainty established, and by reason of which facts great and irreparable injury would have been done to this plaintiff, and but for such acts and threats on the part of the said defendants, as aforesaid, this plaintiff would not have made said payments. (7) If, in making any of the payments above set forth, there was an apparent consent, such payments were made under a mistake sufficient under the laws of this state to render the plaintiff's apparent consent invalid, and in especially that said plaintiff and defendant, each laboring under a mutual misapprehension of said chapter 72 of the Laws of 1897, and believing the same to be valid and binding law of this state, said defendant, the state of South Dakota, demanded from this plaintiff, and this

19 S. D.—20

plaintiff did make the payments, as aforesaid, when in truth and in fact said law was invalid and unconstitutional, and said defendant had no right or authority to receive said sums of money from the plaintiff. (8) That each and all of said payments made as aforesaid were made under protest, and with notice to the said defendant that, if said sums were accepted, suit would be brought to recover the same back.''

The law governing these original actions against the state provides that when the defendant has answered this court shall proceed to hear and determine the cause. If an issue of fact shall arise which the court shall deem necessary to be tried by a jury, it shall certify such issue to the circuit court, and such court shall proceed at its next regular term to try the same by jury as in other cases. Rev. Code Civ. Proc. § 27. Following the procedure thus prescribed, the issues made by the pleadings in this action were certified to the circuit court within and for Minnehaha county, "with authority and direction to proceed at the next regular term of such court to try such issues of fact by submitting under proper instructions to a jury duly impaneled and sworn, as in other cases," certain specified interrogatories. Notwithstanding the explicit order and direction of this court (which constituted the only authority of the circuit court to act in the premises) to submit the issues involved to a jury, the record discloses that the parties waived trial by jury, and stipulated that the issues of fact might be tried by the circuit court. It requires no argument to show that orders of this court cannot be thus modified or abrogated by the parties. These actions cannot be maintained against the state without its consent. They can be prosecuted only in the mode prescribed by the statute; and it is extremely

doubtful whether issues of fact in such cases can be determined otherwise than by this court itself, or by a jury in the circuit court to which such issues are certified. Whether this be so or not, it is clear that consent of parties is not in itself sufficient to confer jurisdiction upon the circuit court to determine the facts, especially where this court has expressly directed that they shall be determined by a jury. It is equally clear that a judgment in this action, predicated upon the findings of the learned circuit court, would be clearly erroneous, if not absolutely void. Therefore the decision of the circuit court must be ignored, and the issues again certified, or this court itself must proceed to hear and determine the same. As all the evidence taken before the circuit court was preserved and has been presented in the form of a bill of exceptions, it has been deemed advisable to hear and determine the action upon such evidence.

An examination of the pleadings will disclose that the plaintiff seeks to recover upon two distinctly inconsistent grounds, namely: (1) That plaintiff's payments were made under compulsion and protest, with notice that suit would be brought to recover the same; and (2) that they were made under a mutual mistake of law, the plaintiff and the representatives of the state believing that the law was constitutional and valid. In other words, plaintiff seeks to prove that the payments were at the same time both involuntary and voluntary. This is manifestly impossible. If the payments were made under the mistaken belief that the law was valid, they could not have been made under the belief that the law was unconstitutional, with intent to sue for their recovery. The plaintiff should have been required, by motion, to elect upon which of

these inconsistent theories it would proceed.    That, however, was not done, so the evidence will be considered with reference to both contentions.    From all the testimony preserved in the bill of exceptions, this court finds the facts to be as follows: Each payment at Sioux Falls was made by a local representative of the plaintiff, acting under its instructions, to the county treasurer, upon the latter's suggestion that such payment was necessary to enable the plaintiff to continue its business. The words "paid under protest" were noted on part of the treasurer's receipts for the money on request of the plaintiff's local representative.    Each payment at Salem was made under substantially the same circumstances, except that the words "Paid under protest" were noted on the treasurer's receipts at his own suggestion.    At Redfield the plaintiff was represented by a local attorney, who contended that the law was invalid. "Various county officers" contended "it read plain enough for them," and declared that the license must be paid or plaintiff's depot would be closed and its agent arrested.    At neither place was any one arrested.    No legal proceedings were ever instituted to enforce the law against the plaintiff, or to punish it or any of its employes for its violation.    No written protest was ever filed with any public officer, or written notice given that the plaintiff intended to sue for the recovery of the sums so paid.    In each instance the plaintiff, by its duly authorized agents, made the necessary application and filed the necessary bond required by the statute.    No action or proceeding was instituted by the plaintiff to determine its rights or recover back its payments until the present action was commenced, which was after the law was declared to be unconstitutional. With respect to one payment at Redfield the state's attorney

was verbally notified that the plaintiff intended to sue for the recovery of the payment then made.

It is a well-settled and universally recognized general rule that money voluntarily paid under a claim of right, and with knowledge of the facts on the part of the person making the payment or affected by it, cannot be recovered back on the ground that the asserted claim was invalid or unenforceable. 22 Am. & Eng. Ency. (2d Ed.) 609. As contradistinguished from voluntary payments. it is equally well settled that payments coerced under duress or unlawful compulsion may be recovered back. Id. 612. As it appears that the plaintiff in this case was represented by counsel who insisted, when the first payment at Redfield was made, that the law was unconstitutional, it cannot be successfully maintained that any of the payments were made under an honest belief on the part of the plaintiff that the law was valid; hence it cannot be said that a mutual mistake of law existed, and the only question to be determined is whether there was such compulsion as rendered any of the payments involuntary. Claims known to be illegal by the parties against whom they are asserted may be, and frequently are, paid voluntarily. "The general doctrine has been frequently announced that a payment is not to be regarded as compulsory unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid, or to prevent a seizure by a party armed with apparent authority to seize the property. The courts, however, have shown a tendency in the later decisions to extend the doctrine of the earlier common law with regard to compulsory payment; and at the present time, beyond a few general principles, they do not attempt

to lay down any definite and exact rule of universal application by which to determine whether a payment is voluntary or compulsory. By the very nature of the subject this cannot be done, as each case must depend somewhat upon its own peculiar facts. The courts have, however, by a gradual process of judicial exclusion and inclusion, arranged certain classes of cases on one or the other side of the line." Id. 613. Viewed in the light most favorable to the plaintiff, nothing more was done by any authorized representative of the state than to threaten a resort to legal proceedings in the event of the plaintiff's failure to comply with the statute. It has been held in numerous cases that threats or apprehension of judicial pro ceedings to enforce the payment of an asserted claim will not prevent the payment from being considered voluntary. Emmons v. Scudder, 115 Mass. 367; Town v. Kress, 55 Ind. 14; Benson v. Monroe, 7 Cush. 125; Dickerman v. Lord, 21 Iowa 338; Vick v. Shinn, 49 Ark. 70, 4 S. W. 60; Holt v. Thomas, 105 Cal. 273, 38 Pac. 891; Muscatine v. Packet Co., 45 Iowa 185; Parker v. Lancaster, 84 Me. 512, 24 Atl. 952; Lester v. Baltimore, 29 Md. 415; Wolfe v. Marshal, 52 Mo. 167; Weber v. Kirkendall, 44 Neb. 766, 63 N. W. 35; Peebles v. Pittsburg, 101 Pa. 304; St. Anthony & D. Elevator Co. v. Soucie, 83 N. W. 212, 50 L. R. A. 262. The reasons underlying these decisions are thus stated in Benson v. Monroe, supra: "It is an established rule of law that if a party, with a full knowledge of the facts, voluntarily pays a demand unjustly made on him, and attempted to be enforced by legal proceedings, he cannot recover back the money, as paid by compulsion, unless there be fraud in the party enforcing the claim, and a knowledge that the claim is unjust. And the case is not altered by the

fact that the party so paying protests that he is not answerable, and gives notice that he shall bring an action to recover the money back. He has an opportunity, in the first instance, to contest the claim at law. He has, or may have, a day in court. He may plead and make proof that the claim on him is such as he is not bound to pay." While it is true, as counsel suggests, that the doctrine of "duress" has been somewhat extended by the modern authorities, yet under no rule, even the most liberal, can the payment of a claim be rendered involuntary by threats to enforce its collection in court. Cunningham v. Stockyards, 59 Minn. 325, 61 N. W. 329. And in the very recent case of St. Anthony & D. Elevator Co. v. Soucie, supra, the Supreme Court of North Dakota uses this language: "True, it was said in Baltimore v. Lefferman, cited by counsel, and reported in 45 Am. Dec. 145, that 'payment is not compulsory unless made to release person or property from an actual, existing duress imposed by the payee.' That was an action to recover money expended in improving a water front in obedience to a demand of the proper official, acting under the authority of a city ordinance afterward declared unconstitutional. It was not technically an action for the recovery of void taxes. The principle there announced has been applied in many other cases. It is undoubtedly the correct and prevailing doctrine in the great majority of instances where money has been wrongfully extorted. Certainly it is true in all cases where there is no assertion of liability against the person making the payment. It is also true in all cases where an asserted claim can only be established in court, because there the party will have his opportunity to defend. Hence threats of legal prosecution, however pronounced, can never render payment compulsory."

This view is in harmony with the definitions of duress and menace found in our Civil Code.    Rev. Civ. Code, §§ 1198, 1199.

The amounts paid by the plaintiff were not demanded as existing liabilities enforceable against it or its property.    It was threatened with no proceeding by which the amounts could be collected.    It was merely required to pay as a condition precedent to the sale of its products, or subject itself to the supposed penalties prescribed by the statutes.    With what was it menaced?    Neither the plaintiff, its property, business, nor employes were threatened with any actual or apparent injury, because neither could be interfered with otherwise than by means of a judicial proceeding wherein the invalidity of the law could be established.    Nothing confronted the plaintiff more serious than the alternative of discontinuing its sales or incurring the insignificant expense and inconvenience of such litigation as was necessary to sustain its contention that the law was unconstitutional.    To avoid a multiplicity of suits, it might have instituted an action in equity directly after the law took effect to enjoin the enforcement of its penalties.    The representatives of the state acted in good faith, without the slightest inclination to harass or oppress the plaintiff.    Had the latter promptly invoked the protection of the courts, its business would have sustained no substantial injury, and the defects in the law might have been promptly disclosed and promptly remedied.    The statute was unconstitutional, not because it required an excessive license of nonresident manufacturers, but because it did not impose the same burden upon residents similarly situated.    Having elected to pay the license, rather than to rely upon its rights, the payments made by the

plaintiff must be regarded as voluntary, and no obligation, legal or moral, rests upon the state to make restitution.

This case is clearly distinguishable from that of Whittaker v. Deadwood et al., 12 S. D. 608, 82 N. W. 202. That was an action to have certain special assessments for street improvements declared void, to cancel certain sale certificates, and to enjoin the city from issuing a deed to plaintiff's real property. The decision below was in favor of the defendants. On the day before the time expired for taking out the deed, the action being then pending in this court on appeal, the plaintiff paid the assessments under protest. Thereupon the respondents moved to dismiss the appeal on the ground that no controversy longer existed. The ruling on this motion involved merely a question of procedure. The plaintiff had promptly invoked the aid of the courts to protect his property. He was prosecuting his appeal with due diligence. It was evident that he had not intended to abandon or compromise the litigation, and a final adjudication could not be secured before the act was done which he was seeking to prevent. Under these circumstances this court, Fuller, J., dissenting, concluded that the appeal should not be dismissed. The distinction between voluntary and involuntary payments was only incidentally considered as analogous to the question of practice presented. But, assuming that such distinction was directly involved, the decision does not determine the present controversy, because its circumstances are substantially different. If Whittaker had not paid the assessments, a deed conveying his property, fair on its face, would have been issued and recorded. If these license fees had not been paid, nothing could have resulted other than the institution of a judicial proceeding to which the plaintiff would have had a perfect defense.

Defendants are entitled to a judgment of dismissal on the merits, and for their costs and disbursements.