Coca-Cola Co. v. Coble, Sec. of Revenue

THE COCA-COLA COMPANY v. J. HOWARD COBLE, SECRETARY OF REVENUE OF THE STATE OF NORTH CAROLINA

No. 7610SC809

(Filed 4 May 1977)

1. **Taxation § 38— unconstitutional statute — recovery of tax — voluntary or involuntary payment**

Generally, one who voluntarily pays a tax imposed by an unconstitutional law without knowledge that the law is unconstitutional may not subsequently recover the tax paid; however, where payment of the tax is involuntary, it may be recovered by the taxpayer.

2. **Taxation § 38— mistake as to constitutionality of statute — voluntary payment**

A mere mistake as to the constitutionality of a taxing statute does not make payment of the tax involuntary.

3. **Taxation § 38— soft drink tax — nonresident distributor — amount in excess of alternate method — voluntary payment**

A nonresident distributor voluntarily paid the soft drink tax by means of taxpaid lids rather than the less expensive alternate method provided by G.S. 105-113.56A and is not entitled to recover the amount paid in excess of the alternate method where the distributor made no attempt to report or pay the tax by the alternate method and did not pay the tax under protest, notwithstanding the nonresident distributor was informed by the Department of Revenue on several occasions that the alternate method was unavailable to it and the Court of Appeals thereafter held that the exclusion of nonresident distributors from the operation of the statute allowing the alternate method of payment constituted an undue burden on interstate commerce.

4. **Taxation § 38— overpayment — action for refund — voluntary payment**

G.S. 105-266.1 does not permit a taxpayer to recover unconstitutionally assessed taxes where the payment was made voluntarily.

APPEAL by defendant from *Herring, Judge.* Judgment entered 22 July 1976 in Superior Court, WAKE County. Heard in the Court of Appeals 15 March 1977.

Plaintiff, a Delaware corporation, instituted this action to recover certain taxes paid on its distribution of a soft drink known as "Hi-C." The taxes were collected pursuant to G.S. 105-113.45, which levies a soft drink excise tax at the rate of one cent for each bottle sold in North Carolina. G.S. 105-113.51 establishes a method whereby the tax is paid by affixing North Carolina taxpaid stamps or crowns to the soft drink container.

An alternate method for payment of the tax was provided by G.S. 105-113.56A:

> "Instead of paying the tax levied in this Article in the manner otherwise provided, any resident distributor or wholesale dealer, and any distributor or wholesale dealer having a commercial domicile in this State may pay the tax in the following manner, with respect to bottled soft drinks:
>
> Beginning with sales made on and after October 1, 1969, of bottled soft drinks subject to the tax, sales reports shall be made by the Commissioner on or before the fifteenth day of each succeeding month, accompanied by payment of the tax due, determined as follows: For the first fifteen thousand gross of bottled soft drinks sold annually, seventy-two cents (72¢) per gross; for all in excess of fifteen thousand gross, one cent (1¢) per bottle. In addition, there shall be allowed a discount of eight percent (8%) of the said tax to be remitted.
>
> All persons paying the tax in this manner shall be subject to such rules and regulations as the Commissioner may prescribe, including the requirement that such persons furnish such bond as the Commissioner may deem advisable, in such amount and upon such conditions as in the opinion of the Commissioner will adequately protect the State in the collection of the taxes levied by this Article."

The lower tax rate and less burdensome method of payment afforded only to resident distributors under the alternative method of G.S. 105-113.56A was held by this Court to be discriminatory and an undue burden on interstate commerce. *Food Stores v. Jones, Comr. of Revenue*, 22 N.C. App. 272, 206 S.E. 2d 346 (1974). We said that "[t]he implied exclusion of non-resident distributors from the act has the same effect as if [it] were boldly stated in express terms and is equally noxious to the Constitution of the United States. It is void." *Id.* at 275, 206 S.E. 2d at 348.

Plaintiff's complaint alleged the following (summarized except where quoted): that plaintiff is a Delaware corporation with its principal place of business in Atlanta, Georgia; that it is domesticated in North Carolina; that a subdivision of plaintiff, The Coca-Cola Company Foods Division, has been

registered with and licensed by defendant under Soft Drink Tax License No. 5079 since 12 September 1969; that during the tax years ending 30 September 1971, 1972, 1973 and 1974, plaintiff's subdivision manufactured and distributed in North Carolina a soft drink called "Hi-C"; "[t]hat since October 1, 1969, the plaintiff, pursuant to G.S. Sec. 105-113.45, paid a soft drink excise tax in the amount of one cent (1¢) per can for every can of Hi-C sold in North Carolina . . ."; that pursuant to G.S. 105-113.51, plaintiff was required to affix a taxpaid crown or stamp to its cans of Hi-C since it was not a North Carolina distributor and had not established a commercial domicile in the State; that a less costly alternate method of payment of the tax was available to in-state distributors by G.S. 105-113.56A; "[t]hat the director of defendant's Privilege License, Beverage and Cigarette Tax Division on several occasions, over the period of time cited above, instructed the plaintiff that G.S. Sec. 105-113.56A did not apply to the plaintiff, and that the North Carolina Department of Revenue would not permit the plaintiff to use the alternate method of payment with respect to its canned soft drinks sold in North Carolina"; that in reliance on the director's instructions and the express provisions of the Soft Drink Tax Act, plaintiff refrained from employing G.S. 105-113.56A's alternate method of payment of the tax; that the Court of Appeals held the alternative method of payment to be discriminatory and an undue burden on interstate commerce; that plaintiff's inability to utilize the alternative method of payment resulted in an additional tax burden to plaintiff of $43,200; that plaintiff had filed for a refund pursuant to G.S. 105-266.1, but that defendant had denied plaintiff's claim for a refund in its entirety. In its prayer for relief, plaintiff asked the court to require defendant to refund plaintiff the sum of $43,200 with interest from the date of each payment.

In his answer, defendant admitted that plaintiff had paid the soft drink tax pursuant to the method in G.S. 105-113.51. However, defendant ". . . denied that any excessive or incorrect tax has been paid by the plaintiff, the plaintiff having paid a tax, correct in amount, pursuant to G.S. 105-113.51, without ever having reported or paid, and without ever having offered or attempted to report or pay, the tax by means of the alternate method pursuant to G.S. 105-113.56A. . . ." Defendant further alleged that "[i]n order for plaintiff to be entitled to any refund, it would either have had to file returns pursuant to G.S.

105-113.56A, or to have paid additional taxes assessed by the defendant, or to return unused lids for refund pursuant to G.S. 105-113.56, neither of which it did," and that plaintiff was not entitled to a refund of any amount.

After pretrial discovery and motions, defendant moved for summary judgment as to plaintiff's claim for refund for the taxable year 1970-71 on the ground that such refund was barred by the limitations of G.S. 105-266.1. On 20 November 1975, Hobgood, Judge, granted summary judgment for defendant as to plaintiff's alleged overpayment of $10,800 in fiscal 1970-71.

Prior to trial, the parties stipulated, *inter alia,* that during the times in question, plaintiff had paid the soft drink tax by means of taxpaid lids; that plaintiff had made several inquires of W. C. Pickett, Jr., an officer in the Department of Revenue, as to whether the law would allow plaintiff to pay the tax according to the alternative method of G.S. 105-113.56A; that plaintiff was informed by Pickett that "the law did not permit" plaintiff to use the alternate method; that ". . . relying on Mr. Pickett's statements, the plaintiff paid the soft drink tax by means of taxpaid lids, the means of payment provided for in G.S. Chapter 105-113.51, and did so without protest"; and that also in reliance on Mr. Pickett, plaintiff failed to file any reports pursuant to G.S. 105-113.56A.

Plaintiff introduced evidence at trial which tended to show that the alternative method of payment was less expensive and more advantageous to plaintiff than the method of taxpaid lids. No evidence was offered by defendant. Judgment was entered for plaintiff granting a refund of $32,400, representing an overpayment of $10,800 for each of the three taxable years in question, plus interest. Defendant appeals from this judgment.

*Attorney General Edmisten, by Special Deputy Attorney General Myron C. Banks, for defendant appellant.*

*Blanchard, Tucker, Twiggs and Denson, by Charles F. Blanchard and R. Paxton Badham, Jr., for plaintiff appellee.*

MORRIS, Judge.

By its first five assignments of error, defendant contends that the trial judge erred in ordering that plaintiff is entitled

to recover any refund for taxes paid by its purchase of taxpaid lids.

[1]   Generally, one who voluntarily pays a tax imposed by an unconstitutional law, and does not know that the law is unconstitutional, may not subsequently recover the tax paid. 84 C.J.S., Taxation, § 637, p. 1284; 72 Am. Jur. 2d, State and Local Taxation, § 1087, p. 349. *See also* Annots., 74 A.L.R. 1301 (1931), 48 A.L.R. 1381 (1927), and cases cited therein. Where payment of the tax is involuntary, however, it may be recovered by the taxpayer. *Sneed v. Shaffer Oil & Refining Co.*, 35 F. 2d 21 (8th Cir. 1929); *Tyler v. Dane County*, 289 Fed. 843 (W.D. Wis. 1923), *appeal dismissed*, 266 U.S. 637, 69 L.Ed. 481, 45 S.Ct. 10 (1924); *Manufacturer's Casualty Insurance Co. v. Kansas City*, 330 S.W. 2d 263 (Mo. App. 1959).

[2]   Problems most often arise in determining whether the payments of the tax were voluntary or involuntary. Payment is deemed involuntary when it is made to release the payor or his property from an actual, existing duress imposed by the payee. *C. & J. Michel Brewing Co. v. State*, 19 S.D. 302, 103 N.W. 40 (1905). "Duress is the result of coercion. It may exist even though the victim is fully aware of all facts material to his or her decision." *Link v. Link*, 278 N.C. 181, 191, 179 S.E. 2d 697, 703 (1971). However, a mere mistake as to the constitutionality of the taxing statutes does not make the payment involuntary. "The weight of authority is to the general effect that a payment of taxes, with knowledge of all the facts, is not rendered involuntary by the fact that it was paid in the mistaken belief that the statute or ordinance under which it was levied was valid." *Manufacturer's Casualty Insurance Co. v. Kansas City, supra*, at 265.

[3]   Plaintiff made inquires "on more than one occasion" to the Department of Revenue to determine whether it could employ the alternate method of payment under G.S. 105-113.56A but was informed that such method was unavailable. Throughout the entire period in question, plaintiff continuously paid the tax pursuant to G.S. 105-113.51 and made no other effort to comply with the alternate method. Moreover, plaintiff did not pay the tax under protest as did the taxpayer in *Food Stores, supra*. Plaintiff maintains, however, that it could not have utilized the alternate method ". . . without violating North Carolina law, incurring civil and criminal sanctions and

involving itself in a constitutional lawsuit, which it did not wish to do and which it had no duty to do." Yet the threat of civil or criminal proceedings is not sufficient coercion to constitute duress and make the payments involuntary. "It has been held in numerous cases that threats or apprehension of judicial proceedings to enforce the payment of an asserted claim will not prevent the payment from being considered voluntary. (Citations omitted.)" *C. & J. Michel Brewing Co. v. State, supra* at 310, 103 N.W. at 42. *See also* 70 C.J.S., Payment, § 150, p. 357.

[4] Plaintiff nevertheless contends that it is entitled to a refund by virtue of G.S. 105-266.1 which provides in pertinent part:

> *"Refunds of overpayment of taxes.*—(a) Any taxpayer may apply to the Commissioner of Revenue for refund of tax or additional tax paid by him at any time within three years after the date set by the statute for the filing of the return or application for a license or within six months from the date of payment of such tax or additional tax, whichever is later. The Commissioner shall grant a hearing thereon, and if upon such hearing he shall determine that the tax is excessive or incorrect, he shall resettle the same according to the law and the facts, and adjust the computation of tax accordingly. The Commissioner shall notify the taxpayer of his determination, and shall refund to the taxpayer the amount, if any, paid in excess of the tax found by him to be due."

Plaintiff argues that G.S. 105-266.1 provides a remedy whereby unconstitutionally assessed taxes may be recovered by the taxpayer regardless of whether or not their payment was voluntary. We disagree.

Some states have enacted legislation which permits recovery of all unconstitutionally assessed taxes. Under these statutes, it is not necessary to determine whether the tax was paid voluntarily or involuntarily. *E.g., Reynolds Fasterners, Inc. v. Wright,* 197 So. 2d 295 (Fla. 1967); *Bank v. Board of Supervisors,* 168 Iowa 501; 150 N.W. 704 (1915); *Schlesinger v. State,* 195 Wis. 366, 218 N.W. 440 (1928). We do not believe, however, that G.S. 105-266.1 is so broad. G.S. 105-266.1 is a procedural statute. It does not set out *when* a taxpayer is entitled to a refund but only the steps by which a refund may be received.

The instances in which a refund is proper are a matter of substantive law and depend, in the present case, upon whether plaintiff's tax payment was voluntary.

Moreover, we do not find *B-C Remedy Co. v. Unemployment Compensation Com.*, 226 N.C. 52, 36 S.E. 2d 733 (1946), cited by plaintiff, to be controlling in this case. In *B-C*, the plaintiff applied for a refund of tax erroneously paid on an employee's salary. Application for a refund was made pursuant to a section of the North Carolina Unemployment Compensation Act which provided for an adjustment or refund where ". . . the Commission shall determine that such contributions or interest or any portion thereof was *erroneously collected* . . ." (Emphasis supplied.) Our Supreme Court stated:

> "As a part of its defense, appellant suggests that there is no remedy for recovery of tax voluntarily paid. That could only be true where the statute fails to provide for a refund under such circumstances, and in a jurisdiction which would regard an action at law for its recovery as a suit against the State, without statutory authority for its institution. In view of the construction we give the statute, we do not find it necessary to discuss the point. The Act is broad enough in its phraseology to cover refund of money paid through mistake, without raising technical distinctions between voluntary and involuntary payments. There is no question that the item was erroneously collected or paid within the meaning of that term as used in the statute." 226 N.C. at 55, 36 S.E. 2d at 735-36.

Thus, the statute involved in *B-C*, unlike G.S. 105-266.1, provided that the taxpayer was entitled to a refund whenever the tax was "erroneously collected." The court's interpretation of the statute was sufficiently broad to include both voluntary and involuntary payments. We do not believe, however, that G.S. 105-266.1 can be interpreted to entitle a taxpayer to a refund where the payment is made voluntarily. Having determined that plaintiff's payment of the soft drink tax constituted voluntary payment, we are of the opinion, and so hold, that plaintiff did not qualify for a refund for the taxable years in question.

In view of our ruling, defendant's other assignments of error are not discussed.

. The judgment is reversed.

Reversed.

Judges VAUGHN and MARTIN concur.